[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12829
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-23734-JEM

ELIZABETH PICON,

Plaintiff-Appellant,

versus

GALLAGHER BASSETT SERVICES, INC.,
a foreign corporation for profit,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 19, 2013)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

In this diversity case, Plaintiff-appellant Elizabeth Picon, brings a civil negligence action against her former employer, defendant-appellee Gallagher Bassett Services, Inc.  This appeal involves whether Florida's workers' compensation law bars Picon's tort action against her employer.  After careful review, we conclude that the district court erred in granting summary judgment to the employer and reverse and remand for further proceedings consistent with this opinion.

## I.  FACTUAL BACKGROUND

As explained later, Florida case law provides that, in certain circumstances, an employer, when sued by an injured employee, may be estopped from asserting the affirmative defense of workers' compensation exclusivity.  Because the central issue here is estoppel, we review what happened before the employee brought this tort lawsuit against her former employer.

### A.    Picon's September 2011 Right Shoulder Injury

Plaintiff Elizabeth Picon ("Picon") worked for defendant Gallagher Bassett Services, Inc. ("Gallagher") from December 31, 1991 until September 25, 2012.  In September 2011, Picon first noticed pain in her right shoulder.  The condition became worse, resulting in a loss of motion.  By February 2, 2012, Picon considered the shoulder pain debilitating.  Picon went to a doctor who diagnosed Picon's problem as tendonitis and informed Picon that the condition resulted from

2

"working on the computer at her desk." Another doctor, who evaluated Picon several months later, believed that Picon's shoulder pain resulted from "repetitive use of a mouse and the computer."

**B.      Picon's February 2012 Workers' Compensation Claim**

Gallagher had a workers' compensation policy that, pursuant to Florida workers' compensation law, covered bodily injury to an employee as a result of injuries or disease arising out of work performed in the course and scope of employment. On February 3, 2012, Picon and Gallagher reported her shoulder pain to Gallagher's workers' compensation insurance carrier (the "insurer"). Gallagher's insurer began paying for Picon's medical treatment.

**C.      Insurer Paid Medical Benefits from February to August 2012**

Gallagher referred Picon to Concentra, a physical therapy clinic. Picon attended approximately 20 physical therapy sessions. This treatment did not alleviate Picon's pain. On March 7, 2012, Picon underwent an MRI and saw an orthopedist, Dr. Eliot Lang who diagnosed Picon as suffering from right shoulder adhesive capsulitis. Dr. Lang gave Picon a cortisone injection in the right shoulder and referred Picon to a surgeon, Dr. David Font-Rodriguez.

Picon saw Dr. Font-Rodriguez on June 12, 2012 and again three weeks later. Dr. Font-Rodriguez agreed with Dr. Lang's diagnosis of right shoulder adhesive capsulitis, which he called "frozen shoulder." Dr. Font-Rodriguez discussed with

3

Picon "[o]perative and nonoperative treatment options . . . along with risks and benefits of each choice, and realistic expectations of each." Dr. Font-Rodriguez's notes stated: (1) "[Picon] will proceed with surgery as soon as she is medically cleared, and approved by the w/c carrier;" and (2) "the carrier is asking her Rheumatologist if her condition is preexisting or related to a rheumatologic problem, clearly which it is not."

Dr. Font-Rodriguez completed a "Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Form," but did not answer the specific questions about whether Picon's shoulder injury was work-related and whether there was more than one contributing cause of the injury.[1] Dr. Font-Rodriguez did write "needs surgery ASAP! . . . medication . . . no use of right arm (light duty) . . . no use of right arm . . . no repetitive use . . . no longer hours at work . . . no driving."

On July 25, 2012, Dr. Font-Rodriguez did send to Gallagher's senior claims representative, Jennifer Roth, a document stating: "see 7/5/12 Adhesive capsulitis [a]s a condition is not caused by Diabetes, nor Systemic Lupus Erythematosus. Most often it is secondary to trauma to affected area (injury, surgery, etc.) sometimes its idiopathic in origin (of unknown etiology)."

---

[1]For example, the unanswered question ten was:
10.  Injury/Illness for which treatment is sought is:
      a) NOT WORK RELATED   b) WORK RELATED         c) UNDETERMINED
      as of this date

**D.    August 2012 Independent Medical Examination of Picon's Shoulder**

Gallagher requested that Picon undergo an "independent" medical examination. Dr. Randall D. Blinn, a certified orthopedic surgeon, physically examined her, reviewed her 2006-2012 medical records, and prepared a report, dated August 23, 2012. Dr. Blinn's report stated that: (1) Picon's ability to move her right shoulder was "still severely limited with internal and external rotation which are both very painful;" and (2) "I do believe that this individual's problem with the right shoulder is most probably because of patient disease."

Dr. Blinn wrote that among the possible explanations for Picon's pain were: "the fact that she is a diabetic female in her sixth decade of life and the fact that she does have a collagen vascular disease and a history of chest pain." In Dr. Blinn's opinion, "[i]t is not reasonable to state that using a mouse or a computer at a workstation in a repetitive fashion is the reason for this persons [sic] right shoulder problem." Dr. Blinn labeled Picon's case "as an idiopathic case of frozen right shoulder."

Dr. Blinn did "not believe that any further treatment is necessary regarding the right shoulder under the workers' compensation date of accident of 2/2/2012." Dr. Blinn advised that "[n]o restrictions are necessary regarding the same" and that "[t]here is no impairment rating regarding the right shoulder and the February 2, 2012 date of accident."

5

## II.  PROCEDURAL HISTORY

### A.    Picon's August 2012 Workers' Compensation Petition

On August 13, 2012, Picon, through counsel, filed a "petition for workers' compensation benefits" with the Division's Office of the Judges of Compensation Claims naming both Gallagher and its insurer.  Picon's petition requested "[a]uthorization for surgery as prescribed by Dr. Rodriguez Font [sic] on 6/18/12 (right shoulder manipulation)" and "[a]uthorization for a PCP to do the pre-ops as prescribed by Dr. Rodriguez-Font [sic]."

### B.    The Insurer Does Not Authorize Surgery and Discontinues Benefits

Under Florida law, Gallagher's insurer had 14 days to: (1) "either pay the requested benefits without prejudice to its right to deny within 120 days from receipt of the petition"; or (2) "file a response to petition."  Fla. Stat. § 440.192(8).  However, the insurer did not pay for the surgery and did not file a response to the petition.

On August 27, 2012, Picon's attorney contacted Gallagher's attorney "and inquired whether surgery would be authorized."  That same day, Gallagher's attorney responded by attaching Dr. Blinn's report and writing: (1) "Dr. Blinn . . . indicates your client's shoulder condition is unrelated to her work activities"; and (2) Gallagher's insurer "will not authorize the shoulder manipulation prescribed by Dr. Font-Rodriguez."

6

That same day, Gallagher's Roth sent an email to an employee at Dr. Font-Rodriguez's office stating: "Based upon our 8.23.12 IME with Dr. Blinn, surgery will not be authorized under workers' compensation. Please note that no further shoulder treatment will be authorized as Dr. Blinn did not feel her shoulder complaints were related to her job duties." Dr. Font-Rodriguez's employee sent this message on to Picon, writing: "Sorry this is the answer I received today."

## C.    Picon's September 2012 Complaint

Thereafter, on September 17, 2012, Picon filed a complaint in state court alleging that Gallagher had acted negligently and that "[o]ver the course of her employment between 1991 and February 2, 2012, the Plaintiff suffered on-the-job injuries during the work she performed as a consequence of the aforesaid negligence of the Defendant." Gallagher removed the case to federal court.

## D.    Picon's September 2012 Withdrawal of Workers' Compensation Petition

On September 25, 2012, Picon voluntarily dismissed her workers' compensation petition. Picon's attorney stated that Picon did so "[r]elying upon the position taken by Gallagher Bassett that Ms. Picon's shoulder injury was not related to her employment." Picon paid for and underwent surgeries on her right shoulder on October 1, 2012 and November 26, 2012. Dr. Font-Rodriguez performed these surgeries.

## III.  SUMMARY JUDGMENT PROCEEDINGS

7

After discovery, Gallagher filed a motion for summary judgment.  Gallagher argued that Picon's negligence claim was barred by workers' compensation exclusivity.  Specifically, Gallagher reasoned that: (1) Picon was its employee at all relevant times; (2) it maintained a workers' compensation liability insurance policy; and (3) Picon's sole vehicle to "challenge Dr. Blinn's finding is the workers' compensation court and a ruling by a Judge of Compensation Claims in her favor."

In opposition, Picon argued that summary judgment was inappropriate because Gallagher was estopped from asserting workers' compensation exclusivity.  Picon reasoned that estoppel applied because: (1) Gallagher denied her surgery claim on the basis that her condition was "unrelated to her work activities"; and (2) Picon acted in reliance on Gallagher's position that her condition was "unrelated to her work activities" by bringing a tort claim, dismissing her workers' compensation petition, and paying for the necessary medical procedures. [2]

---

[2]The district court also denied Picon's request for partial summary judgment in her favor, but Picon does not appeal that ruling.

8

The district court granted Gallagher's motion for summary judgment.  The district court concluded that under Florida law, workers' compensation exclusivity barred Picon's negligence claim.  Picon appealed. [3]

## IV.  APPLICABLE FLORIDA LAW

In this diversity case, we apply the law of the forum state, Florida.  See James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 n.1 (11th Cir. 2008).

Under Florida law, when an individual suffers an accidental compensable injury "arising out of work performed in the course and scope of employment," the individual's employer must provide compensation for that injury or furnish the benefits through a workers' compensation insurance carrier.  Fla. Stat. § 440.09(1).  The workers' compensation system is the employee's only means of pursuing claims against her employer for injuries "arising out of work performed in the course and scope of employment," see id., subject to two narrow statutory exceptions, neither of which applies here.  Fla. Stat. § 440.11(1).

We review eight Florida appellate decisions that discuss the estoppel doctrine in an employee's lawsuit where the employer raised workers'

---

[3]We review de novo a district court's grant of summary judgment and draw "all inferences and review all evidence in the light most favorable to the non-moving party." Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (internal quotation marks omitted).  "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (internal quotation marks omitted).

compensation exclusivity as an affirmative defense.  We then apply that Florida law in those decisions to Picon's case.[4]

## A.    Elliott v. Dugger (Fla. 1st DCA 1989)

In Elliott v. Dugger, 542 So. 2d 392 (Fla. 1st DCA 1989), the plaintiffs Robert Elliott (an employee at a state prison) and his wife sued the Florida Department of Corrections's Secretary and others for negligence after Mr. Elliott "ingested blood serum contaminated with the AIDS virus while on duty" at a prison.  Id. at 392–93.  The Elliotts' complaint alleged that "Robert Elliott was denied a claim for workers' compensation benefits on the basis that the infection of the positive serum did not arise 'naturally or unavoidably' as a result of his employment."  Id. at 393.

In their answer, the defendants "raised the affirmative defense of the exclusivity of the Workers' Compensation Act."  Id.  In response, the Elliotts argued that the defendants were "estopped from asserting the exclusivity defense on the basis that '[p]laintiff timely filed a claim for workers' compensation benefits; his claim was denied by the state of Florida; plaintiff detrimentally and in reliance thereon instituted the subject action.'"  Id. (alteration in original).

---

[4]All eight decisions are by District Courts of Appeal.  If the Florida Supreme Court has not addressed an issue, we look to guidance from the Florida District Courts of Appeal and apply those courts' decisions absent "persuasive indication" that the Florida Supreme Court would do otherwise.  See Flintkote Co. v. Dravo Corp., 678 F.2d 942, 945 (11th Cir. 1982).

Later on, the defendants moved for summary judgment on the basis of workers' compensation exclusivity. Id. at 393. In response, the plaintiffs submitted Mr. Elliott's testimony stating that "his claim for benefits was denied in a letter which he subsequently received in which it was stated that there were no benefits due under his claim." Id. The Elliotts were not able to locate that letter. Id.[5]

The trial court granted the defendants' motion. Id. On appeal, the Elliotts argued that "there were material issues of fact existing as to whether [the defendants] [are] estopped from raising the exclusivity provisions of the Workers' Compensation Act as a defense." Id.

Reversing, the First District Court of Appeal explained that "[s]ummary judgment is particularly unsuitable in a case where the facts and circumstances indicate the possibility of an estoppel." Id. The Florida appellate court declined to "construe the meaning of the alleged representation made by [the defendants] that no benefits were due claimant." Id. at 394 (emphasis added). The court said that "representation could have meant, for instance, either that the Department of Corrections was of the opinion that there had yet been no injury shown, or that it had taken the position that Elliott had no right to claim benefits because the injury was not a covered injury." Id. The court went on that "if [the defendants] denied

---

[5]Nothing in the record suggested that the employer-state ever paid workers' compensation benefits before denying the claim. See Elliott, 542 So. 2d at 393.

workers' compensation coverage on the basis that Robert Elliott's alleged injury was not encompassed within the Act or on the basis that he was injured under other situations not covered by the Act, the Elliotts were free to pursue common law remedies." Id. Thus, summary judgment was inappropriate, in light of the existence of "genuine issues of material fact concerning the issue of estoppel." Id. Specifically, that factual issue was what was the employer's given reason for denying the workers' compensation claim. See id.

## B.    Byerley v. Citrus Publishing, Inc. (Fla. 5th DCA 1999)

Next was Byerley v. Citrus Publishing, Inc., 725 So. 2d 1230 (Fla. 5th DCA 1999), where an employee, Audrey Byerley, sued her employer, Citrus Publishing, for negligence after she sustained injuries from tripping over a bench located on Citrus Publishing's property. Id. at 1231. Ms. Byerley had "punched out for the day" when the accident occurred. Id. The accident caused Ms. Byerley to suffer "a compression fracture of the vertebrae in her back, pull[] her right groin muscle, fracture[] her left kneecap, and suffer[] numerous abrasions." Id. "Her total medical bills exceeded $30,000." Id.

Ms. Byerley first "filed a claim for workers' compensation benefits which was denied by the employer and its workers' compensation carrier." Id. Citrus Publishing did not pay any portion of Ms. Byerley's $30,000 medical bills or otherwise pay her workers' compensation benefits. See id.

12

"The notice of denial stated: 'Injury did not arise out [of] the course and scope of [Byerley's] employment.  Employee was clocked out and had exited the building, when she tripped over a bench on the pavement.'"  Id. at 1231 (alterations in original).  After Ms. Byerley filed her tort complaint, the employer moved for summary judgment, asserting that "Byerley's exclusive remedy was worker's compensation."  Id.  The trial court granted summary judgment for the employer.  Id.

Reversing, the Fifth District Court of Appeal reasoned that Citrus Publishing "created a Hobson's choice for Byerley: the employer, through its insurance carrier, denied her claim for workers' compensation, and then, when Byerley elected to proceed in a tort action, argued that she could not sue because her exclusive remedy was the Workers' Compensation Act."  Id. at 1232.  Therefore, the appellate court concluded that "it would be inequitable for an employer to deny worker's compensation coverage on the ground that the employee's injury did not arise out of the course and scope of employment, then later claim immunity from a tort suit on the ground that the injury did arise out of the course and scope of employment."  Id.

The Florida court reasoned that: (1) the employer had informed Ms. Byerley that it was denying her claim "because it did not occur in the course and scope of her employment"; (2) Ms. Byerley had "accepted and relied on the denial, bore her

13

medical expenses, then sued the employer in tort as permitted by the statute"; and (3) the "elements of estoppel are shown" and the employer was not entitled to summary judgment. Id. at 1232–33.

## C.    Tractor Supply Co. v. Kent (Fla. 5th DCA 2007)

The third case, Tractor Supply Co. v. Kent, 966 So. 2d 978 (Fla. 5th DCA 2007), involved an employee, Kent, who worked for Tractor Supply Co. ("TSC"). Id. at 979. Kent alleged that, while at work, he was exposed to hydrated lime dust, which can cause lung injuries and aggravate breathing disorders. Id. Kent filed a petition for benefits through the workers' compensation system, and his employer's insurer denied the claim, stating the condition complained of: (1) "was the result of a pre-existing medical condition and not the result of employment with TSC"; and (2) "was the result of a prior worker's compensation claim that had been settled for continuing treatment." Id.

Kent initially pursued remedies through the workers' compensation system. Id. After discovery in that forum and just before mediation, Kent voluntarily dismissed his workers' compensation petition and filed a complaint in state court against TSC. Id. The workers' compensation claim thus "was withdrawn before it was adjudicated." Id.

In the tort case, Kent moved for partial summary judgment on the issue of whether TSC was estopped from asserting workers' compensation exclusivity as

14

an affirmative defense. Id. The trial court granted Kent's motion and TSC appealed. Id.

Reversing, the Fifth District Court of Appeal framed the issue as: whether the Byerley and Elliott decisions "establish that an employer such as TSC, who, through its comp carrier, denies a worker's compensation claim on the basis that the injury or illness was pre-existing, is then estopped from asserting worker's compensation immunity and exclusivity in defending against a civil tort action[?]" Id. at 978 (footnote omitted). The Florida appellate court held that they do not. Id. at 980–81.

The Florida appellate court read Byerley narrowly, stating that "Byerley holds that expressly asserting that an injury did not occur in the scope and course of employment estops the employer from defending a subsequent tort action on the ground that the claim arose in the course and scope of employment." Id. Importantly, "[i]t is not simply the denial, but rather the irreconcilable positions asserted, that led to the result in Byerley." Id. The irreconcilable position in Byerley was the insurer claimed Ms. Byerley's fall injury did not occur in the course and scope of her employment but later asserted workers' compensation exclusivity when she sued. See id.

In contrast, in Kent, the Florida appellate court explained, TSC's insurer "did not assert that no employment relationship existed or that the incident

15

occurred outside the scope of employment.  Rather, the denial asserts that under the terms of the Worker's Compensation Act, the injury is one which is not deemed compensable."  Id.  The Florida appellate court explained that "[t]here is no irreconcilable conflict in the employer here raising a pre-existing medical condition defense to a comp claim, but asserting it is, nevertheless, insulated from a civil suit."  Id. at 981.  To the extent that Kent objected to the insurer's determination, the court held that "Kent could and should have litigated the defense of pre-existing injury/illness in the comp action" as "[a] pre-existing injury or illness is a recognized defense to a claim for comp benefits."  Id.

## D.    Coca-Cola Enterprises, Inc. v. Montiel (Fla. 2d DCA 2008)

Shortly thereafter, Florida's Second District Court of Appeal decided Coca-Cola Enterprises, Inc. v. Montiel, 985 So. 2d 19 (Fla. 2d DCA 2008), the fourth case we review.  In Montiel, the plaintiff "suffered a back injury while unloading Coca-Cola products at a Tampa Kash N' Karry store."  Id. at 19.  The appellate court stated that "[u]nquestionably, the injury occurred in the course and scope of employment."  Id.  Monteil's employer, Coca-Cola, "paid workers' compensation benefits to him for twelve weeks."  Id.  Coca-Cola stopped doing so upon receipt of medical evidence indicating "that Mr. Monteil's condition no longer related to his work injury, but to a degenerative condition."  Id. at 20.  Monteil "did not claim

16

further benefits under the workers' compensation statute" and instead "sued Coca-Cola and Kash N' Karry for negligence." Id.

In the negligence action, Coca-Cola sought summary judgment on the basis of workers' compensation exclusivity. The trial court denied the summary judgment after the plaintiff argued that "the denial of further benefits estopped Coca-Cola from claiming workers' compensation exclusivity." Id.

Reversing, the Florida appellate court pointed out that, unlike in Elliott and Byerley, "Mr. Monteil's injury was work-related. Coca-Cola never contended otherwise. Coca-Cola paid benefits for approximately three months. Indeed, Coca-Cola denied further benefits only when medical evidence indicated Mr. Monteil's condition no longer related to his work injury." Id. The court concluded that it was not aware of a "statutory provision that, under these circumstances, strips the employer of the exclusivity defense." Id. "Had Mr. Monteil thought himself entitled to further benefits," the court explained, "the statute provided a vehicle to seek relief." Id. (citing Fla. Stat. § 440.192 ("Any employee may, for any benefit that is ripe, due, and owing, file with the Office of the Judges of Compensation Claims a petition for benefits which meets the requirements of this section and the definition of specificity in § 440.02.")).

**E.    Schroeder v. Peoplease Corp. (Fla. 1st DCA 2009)**

17

Our fifth case is <u>Schroeder v. Peoplease Corp.</u>, 18 So. 3d 1165 (Fla. 1st DCA 2009), where plaintiff Schroeder, a truck driver, worked for Peoplease Corp. <u>Id.</u> at 1166. Schroeder was injured when he attempted to manually move a 2,000 pound load within his trailer causing the onset of heart problems and the need for emergency heart surgery. <u>Id.</u> Schroeder filed a workers' compensation petition. <u>Id.</u> "Peoplease controverted the entire claim and filed a notice of denial which" gave six reasons for denying the claim. <u>Id.</u> One of the reasons was "[t]he present condition of claimant is not the result of injury arising out of and in the course and scope of his or her employment." <u>Id.</u> The other reasons related to whether a causal connection existed between Schroeder's work and his condition and whether his injury was a compensable one under the statute. <u>Id.</u> It was undisputed that Peoplease had paid no benefits, either medical or lost wages, since Schroeder's injury in 2006. <u>Id.</u> at 1168.

After the denial, Schroeder commenced a civil action against, <u>inter alia,</u> Peoplease and argued that, given its denial, Peoplease could not assert workers' compensation exclusivity as an affirmative defense. <u>Id.</u> at 1165–66. Peoplease sought summary judgment on the basis of workers' compensation exclusivity. Peoplease filed an affidavit of its insurer's adjuster stating that the intent of the denial notice was "neither to assert a lack of an employment relationship nor to allege that Mr. Schroeder's incident occurred outside the scope of the employment

18

relationship." Id. at 1167. Instead, the intent of the denial notice "was to dispute that Mr. Schroder's injury was compensable." Id. The state trial court granted summary judgment for Peoplease. The Schroeders appealed. Id. at 1167–68.

Reversing, the First District Court of Appeal concluded that the case was akin to Byerley and Elliott. The employer, Peoplease tried to distinguish Byerley by arguing that in that case "it was clear that the employee was not in the course and scope of employment because she had 'clocked out and had exited the building, when she tripped over a bench.'" Id. at 1169. The Schroeder court rejected the employer's argument that "when the facts make clear that the employee suffered a workplace incident, then estoppel will never apply despite what the employee and carrier may have said in the notice of denial." Id. Thus, like in Elliott, "there remain disputed issues of material fact as to the meaning of the language employed in the notice of denial." Id. at 1170. The court pointed out that "[s]ummary judgment is inappropriate where the wording of a document is ambiguous and interpretation involves questions of fact." Id. Because "[w]hether estoppel is appropriate in this case and whether the employer took irreconcilable positions is dependent upon the meaning to be accorded the notice of denial," the court reversed and remanded. Id.

### F.    Coastal Masonry, Inc. v. Gutierrez (Fla. 3d DCA 2010)

19

Our sixth case is <u>Coastal Masonry, Inc. v. Gutierrez</u>, 30 So. 3d 545 (Fla. 3d

DCA 2010), where the plaintiff, Gutierrez, was injured while "lifting concrete

blocks." <u>Id.</u> at 547. Gutierrez filed a petition for workers' compensation benefits

from his employer, Coastal Masonry, and the employer's insurer denied the claim

"in its entirety." <u>Id.</u> It was "undisputed that Coastal [Masonry] paid no benefits to

Gutierrez." <u>Id.</u>

The notice of denial gave several reasons, specifically: (1) "[t]he claimant

did not report the alleged injury to the employer in a timely manner"; (2) "[t]<u>he</u>

<u>present condition of the claimant is not the result of an injury by accident arising</u>

<u>out of and in the course and scope of employment</u>"; (3) "[t]here is no accident or

occupational disease"; (4) "[t]he condition complained of is not the result of an

injury"; (5) "[t]he claimant's medical condition is the result of a pre-existing

condition or disease"; and (6) "[t]he claimant's medical condition is personal, pre-

existing and/or idiopathic in nature." <u>Id.</u>

After receiving the notice of denial, Gutierrez "voluntarily dismissed his

petition and filed a negligence action against Coastal [Masonry]." <u>Id.</u> Gutierrez's

complaint alleged "that Coastal [Masonry] had denied his workers' compensation

claim on the basis that the accident and injuries did not arise out of his employment

and were not covered by workers' compensation." <u>Id.</u> (internal quotation marks

and alterations omitted). Coastal Masonry admitted this allegation "and further

20

denied that Gutierrez was a Coastal [Masonry] employee." Id. "Notwithstanding [this] denial . . . , Coastal [Masonry] denied that it had waived workers' compensation immunity and further asserted that immunity as an affirmative defense." Id.

Later, Coastal Masonry moved for summary judgment on the basis of workers' compensation exclusivity and the trial court denied the motion and found that Coastal Masonry was estopped as a matter of law from asserting the defense. Id. Coastal Masonry appealed. Id.

Affirming, the Third District Court of Appeal held that "the record shows that Coastal [Masonry] has taken inconsistent positions." Id. at 548. Specifically, it had "denied Gutierrez's claim for workers' compensation benefits stating that '[t]he present condition of the claimant is not the result of an injury by accident arising out of and in the course and scope of employment.'" Id. Then, Coastal Masonry "asserted as an affirmative defense that it was entitled to the exclusivity defense because the accident arose in the course and scope of Gutierrez's employment." Id. The appellate court pointed out that Coastal Masonry's summary judgment position was inconsistent with the position it took in the workers' compensation forum and in its own answer in the case. Id.

Having determined that the employer took inconsistent positions, the Florida appellate court next turned to "whether, as a matter of law, Coastal [Masonry] is

21

estopped from raising a workers' compensation exclusivity defense." Id. The court explained that the elements of estoppel are: (1) "a representation by the party estopped to the party claiming the estoppel as to some material fact, which representation is contrary to the condition of affairs later asserted by the estopped party"; (2) "reliance upon this representation by the party claiming the estoppel"; and (3) "a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon." Id. (internal quotation marks omitted). The court determined that "the record established the elements of estoppel" as Gutierrez "(1) dismissed the worker's compensation claim; (2) incurred medical expenses; and (3) filed a negligence action to recover damages resulting from his injury." Id. Accordingly, the appellate court affirmed the trial court's conclusion that estoppel applied as a matter of law to bar Coastal Masonry's workers' compensation defense. Id.

## G.    Mena v. J.I.L Construction Group Corp. (Fla. 4th DCA 2012)

Next, we turn to Mena v. J.I.L. Construction Group Corp., 79 So. 3d 219 (Fla. 4th DCA 2012). The plaintiff, Mena, "while constructing a home, . . . fell to the ground from a second-floor roof truss" and "sustained multiple injuries." Id. at 221. Mena filed workers' compensation claims with his employer ("J.I.L.") and the sub-contractor ("Slorp"). Id. at 222. Both companies denied the claims. Id. Slorp's notice of denial stated that "Mena was employed by J.I.L., not Slorp." Id.

J.I.L.'s notice of denial said: (1) "There is no employer/employee relationship established"; (2) "Failure to report injury timely"; (3) "The Employer/Carrier/Servicing Agent reserves the right to these and any other defenses that may become apparent." Id.

Eight months later, Mena voluntarily dismissed his workers' compensation petitions and "filed suit against J.I.L. and Slorp for negligence." Id. Both defendants asserted workers' compensation exclusivity as affirmative defenses. Id. When defendants moved for summary judgment, "Mena argued that J.I.L. and Slorp should be estopped from asserting worker's compensation exclusivity because of their previous denials." Id. The trial court granted summary judgment to defendants, "finding that their previous 'general denials' were not inconsistent with their claims of entitlement to worker's compensation immunity." Id.

Reversing as to defendant J.I.L., the Fourth District Court of Appeal explained that when "the language employed in the notice of denial could give rise to more than one interpretation, such that it cannot be fairly determined whether the employer's positions are inconsistent, summary judgment is inappropriate." Id. at 223. The court applied this principle to the case, noting that "J.I.L's denial suggested it was asserting that Mena was not its employee. At the very least, . . . the meaning of the language employed in the notice of denial is unclear." Id. (internal quotation marks omitted). Because "issues of material fact remain with

23

respect to whether J.I.L. asserted inconsistent positions and whether it should be estopped from claiming it is entitled to worker's compensation immunity," the court reversed "the entry of summary judgment in favor of J.I.L." Id.

On the other hand, the Florida appellate court affirmed summary judgment in favor of Slorp. Id. at 223–24. The court observed that "Slorp maintained consistent positions in the worker's compensation forum and in Mena's civil action." Id. Specifically, "Slorp denied Mena's worker's compensation claim on the basis that Mena was employed by J.I.L. not Slorp, and that J.I.L. had coverage. Slorp's affirmative defense of worker's compensation immunity stated that Mena was acting in the course and scope of employment performing work subcontracted by Slorp to J.I.L." Id.

## H.    Ocean Reef Club, Inc. v. Wilczewski (Fla. 3d DCA 2012)

Most recently, in Ocean Reef Club, Inc. v. Wilczewski, 99 So. 3d 1 (Fla. 3d DCA 2012), two former employees (Wilczewski and Leon) of a beauty salon alleged that they were exposed to chemical fumes while at work, and as a result, had suffered "asthma-like symptoms, headaches and respiratory problems." Id. at 2. The employees notified their employer of their injuries, but the beauty salon owner, Ocean Reef, did not notify its workers' compensation insurance carrier. Id. The employees "brought a civil action for damages against Ocean Reef" at which point Ocean Reef "notified the workers' compensation insurance carrier of the

24

claims." Id. The insurer "denied the claims contending that the illnesses did not occur in the course and scope of employment" and noting that "the statute of limitations had run." Id.

In the employees' civil action, Ocean Reef moved for summary judgment "arguing that Wilczewski's and Leon's injuries were work-related, and that, based on workers' compensation immunity, it was immune from suit as a matter of law." Id. at 3. The trial court denied the motion and Ocean Reef appealed. Id. at 4.

Affirming, the Third District Court of Appeal held that, as a matter of law, Ocean Reef was estopped from asserting workers' compensation immunity. Id. The court reasoned that because "the carrier's denial is absolutely clear on its face that the reason for the denial is '[n]o accident in the course and scope of employment,' it is 'clearly irreconcilable' with the defense of tort immunity asserted by Ocean Reef." Id. As the carrier's basis for denying the claim was imputed to the employer, Ocean Reef could not "contend that the injuries were, in fact, related to work and therefore covered by workers' compensation when it has clearly denied coverage on inconsistent grounds earlier." Id.

## V.  GENUINE ISSUES OF MATERIAL FACT

These decisions make clear that, under Florida law, whether estoppel applies to prevent an employer from asserting the workers' compensation exclusivity defense in a tort action may turn on what reasons were given for denying workers'

compensation benefits.  When the record reveals multiple possible explanations for the denial, or the language in the denial document is ambiguous and gives rise to more than one interpretation, issues of material fact exist over whether the employer's position is inconsistent so as to indicate possible estoppel.  See Mena, 79 So. 3d at 222–23; Schroeder, 18 So. 3d at 1170; Elliott, 542 So. 2d at 393–94.

That is the case here.  Gallagher's insurer paid Picon workers' compensation for almost six months as a result of her right shoulder pain, suggesting that Gallagher's insurer considered the condition work-related.  But when Picon requested the surgery recommended by Dr. Font-Rodriguez, Gallagher denied the request, relying on Dr. Blinn's opinion that her right shoulder problem was not work-related.  Gallagher on appeal argues that Dr. Blinn meant only that Picon's work was not a "major contributing cause" of her right shoulder pain.

The communications in the record between Gallagher and Picon or her attorney do not contain the words "major contributing cause" or otherwise clearly reflect this position.  Further, to some extent, Dr. Blinn appeared to focus on medical causation by saying Picon's injury was due to her age, diabetes, vascular disease, and chest pain, which may make Picon's problems preexisting.

On the other hand, Gallagher's emails, viewed in the light most favorable to Picon, can be construed as denying the existence of an incident occurring in the course and scope of employment.  For example, Gallagher's attorney wrote that

26

Picon's "shoulder condition is unrelated to her work activities." Likewise, Gallagher's senior claims representative Roth wrote that "no further shoulder treatment will be authorized as Dr. Blinn did not feel her shoulder complaints were related to her job duties." Dr. Blinn himself wrote "it is not reasonable to state that using a mouse or computer at a workstation in a repetitive fashion is the reason for this persons [sic] right shoulder problem."

We do not conclude that estoppel applies here as a matter of law. We determine only that there were genuine issues of material fact as to what were Gallagher's reason or reasons for the denial of Picon's request for workers' compensation benefits. Accordingly, the district court erred in granting summary judgment to the defendant Gallagher as a matter of law based on its workers' compensation exclusivity affirmative defense.

## VI.  CONCLUSION

For the reasons stated above, we reverse the grant of summary judgment for the defendant Gallagher and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**