[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13696
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 16, 2012
JOHN LEY
CLERK

D.C. Docket No. 6:10-cv-00871-ACC-DAB

JARRETTA P. HAMILTON,

Plaintiff - Appellant,

versus

SOUTHLAND CHRISTIAN SCHOOL, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 16, 2012)

Before CARNES, MARTIN, and JORDAN, Circuit Judges.

CARNES, Circuit Judge:

A woman of childbearing age was hired as a teacher at a small Christian

school.  Then she got pregnant, married, and fired.  In that order.  Then she filed a lawsuit.  She lost on summary judgment.  This is her appeal.

I.

In January 2008, Jarretta Hamilton began teaching at Southland Christian School.  Sometime in January 2009, she and her then-fiancé conceived a child.  They got married the next month.  On Sunday, April 5, 2009, Hamilton met with John and Julie Ennis, Southland's administrator and assistant administrator, to tell them that she was pregnant and to ask for maternity leave during the next school year.  During that meeting, she admitted that she had conceived the child before getting married.  Southland fired Hamilton the following Thursday, purportedly because she had sinned by engaging in premarital sex and, as John Ennis put it, "there are consequences for disobeying the word of God."

Hamilton filed a charge of discrimination with the Equal Employment Opportunity Commission, which issued a right-to-sue letter on May 4, 2010.  She then filed a complaint in federal district court against Southland asserting a claim of pregnancy discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1)–(2), 2000e(k), and state law claims of marital status discrimination and invasion of privacy.  After discovery Southland moved for summary judgment on all three claims.  The court granted Southland's motion on

2

the pregnancy discrimination and marital status discrimination claims, and it dismissed without prejudice the invasion of privacy claim. About the pregnancy discrimination claim, the court concluded that Hamilton had not established a prima facie case because she had not produced evidence of a nonpregnant comparator who was treated differently.

## II.

Hamilton appeals only the court's grant of summary judgment in favor of Southland on her pregnancy discrimination claim, contending that she has established a prima facie case of unlawful discrimination. We review de novo a district court's grant of summary judgment and draw "all inferences and review[] all evidence in the light most favorable to the non-moving party." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). "Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

## A.

There is a ministerial exception to employment discrimination laws, see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. Equal Emp't Opportunity Comm'n, — U.S. —, 132 S.Ct. 694, 706 (2012), but any issue involving that

3

exception has not been properly presented to us. Southland did raise that affirmative defense in its answer and also in its motion for summary judgment, but the district court rejected the defense. The court granted summary judgment to Southland anyway, but it did so on the ground that Hamilton had not established a prima facie case that her pregnancy was the reason Southland fired her.

Southland could have argued the ministerial exception defense to us as an alternative basis for affirming the district court's judgment in its favor by including that argument in its brief as appellee. See, e.g., Blum v. Bacon, 457 U.S. 132, 137 n.5, 102 S.Ct. 2355, 2359 n.5 (1982) ("It is well accepted, however, that without filing a cross-appeal or cross-petition, an appellee may rely upon any matter appearing in the record in support of the judgment below."); Sanchez-Velasco v. Sec'y, Dep't of Corr., 287 F.3d 1015, 1026 (11th Cir. 2002) ("An appellee may, without cross-appealing, urge in support of a result that has been appealed by the other party any ground leading to the same result, even if that ground is inconsistent with the district court's reasoning.").

Southland's brief mentions the ministerial exception only once, and that is when describing the district court's rulings: "The Court determined that the ministerial exception did not apply in this case." Appellee Br. 7. Southland abandoned that exception as a defense by failing to list or otherwise state it as an

issue on appeal. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at trial—will be considered abandoned."); Johnson v. Wainwright, 806 F.2d 1479, 1481 n.2 (11th Cir. 1986) (holding that an appellee's failure to raise an affirmative defense on appeal "waives any right to claim such a defense"); cf. Fed. Sav. & Loan Ins. Corp. v. Haralson, 813 F.2d 370, 373 n.3 (11th Cir. 1987) ("[I]ssues that clearly are not designated in the appellant's brief normally are deemed abandoned."). A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it. See Singh v. U.S. Att'y Gen., 561 F.3d 1275, 1278 (11th Cir. 2009) (per curiam) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal."); Kelliher v. Veneman, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002) (stating that because the appellant "only mentioned his EEOC retaliation claim in the summary of the argument in his initial brief" and "made no arguments on the merits as to this issue, the issue is deemed waived"); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (stating that passing references are insufficient to raise issues for appeal and such issues are deemed

abandoned).  Not only did Southland fail to argue in its brief that the ministerial exception applies, its brief actually indicates that Southland did not consider Hamilton, who taught at the school, to be a minister.  See Appellee Br. 5–6 (introducing its argument with a sentence claiming a right "to terminate non-minister employees").

More than three months after filing its brief, Southland filed with us a notice of supplemental authority directing our attention to the Supreme Court's Hosanna-Tabor decision, but a party cannot inject new, nonjurisdictional issues into an appeal by filing unrequested supplemental letters or briefs.  See United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) ("[P]arties cannot properly raise new issues at supplemental briefing, even if the issues arise based on the intervening decisions or new developments cited in the supplemental authority.").  There was plenty of argument about the ministerial exception at oral argument, but that also "comes too late."  Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1338 n.6 (11th Cir. 2009); accord McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review.").

The requirement that issues be raised in a party's brief on appeal promotes careful and correct decision making.  It ensures that the opposing party has an

opportunity to reflect upon and respond in writing to the arguments that his adversary is raising. And it gives the appellate court the benefit of written arguments and provides the court and the parties with an opportunity to prepare for oral argument with the opposing positions and arguments in mind. It is not too much to ask of an appellant or an appellee. Because Southland did not raise any issue or make any argument in its brief about the ministerial exception, we will not decide whether that exception might apply.

B.

We turn now to the issue that Hamilton and Southland did properly raise in their briefs, which is whether the district court erred in concluding that Southland was entitled to summary judgment on the ground that Hamilton had not established a prima facie case that she was fired because of her pregnancy instead of her premarital sex. The reason the difference matters is that Title VII does not protect any right to engage in premarital sex, but as amended by the Pregnancy Discrimination Act of 1978, Title VII does protect the right to get pregnant. See 42 U.S.C. §§ 2000e-2(a)(1)–(2), 2000e(k).

When analyzing pregnancy discrimination claims, we use the same type of analysis that we use for sex discrimination claims. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312–13 (11th Cir. 1994). A plaintiff alleging a claim of

7

pregnancy discrimination must show that her employer intended to discriminate against her because of her pregnancy. Id. at 1313. She may make that showing using either direct or indirect evidence. Id. Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee" and "that, if believed, proves the existence of a fact without inference or presumption." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (alterations and quotation marks omitted). Indirect evidence is circumstantial evidence. See Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999).

There is more than one way to show discriminatory intent using indirect or circumstantial evidence. One way is through the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981). Another way is "present[ing] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). A triable issue of fact exists if the record, viewed in the light most favorable to the plaintiff, presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination. See id. If the plaintiff presents enough circumstantial evidence to

8

raise a reasonable inference of intentional discrimination, her claim will survive summary judgment.  Id.

Southland contends that Hamilton has not presented enough circumstantial evidence to raise a reasonable inference of intentional discrimination because she undisputably cannot show a nonpregnant comparator who was treated differently. But she does not have to show a comparator if she can show enough non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination, see id. at 1328 ("[T]he plaintiff's failure to produce a comparator does not necessarily doom [her] case."), and she has done that.

Hamilton presented evidence that, in making the decision to fire her, Southland was more concerned about her pregnancy and her request to take maternity leave than about her admission that she had premarital sex.  She testified at deposition that, after she told the Ennises about her pregnancy but before she told them she had conceived before getting married, John Ennis "put his head back and he said, we feared something like this would happen."  Hamilton testified that John Ennis told her that she was going to have to "take the year off" because replacing a teacher taking maternity leave after the school year had started was hard to do.  She also testified that it appeared to her the Ennises primary concern was her request for maternity leave.  According to Hamilton's deposition

9

testimony, at some point during the meeting, she asked John Ennis: "[W]hat is the issue here? Is it because of the coverage? Or is it because of the premarital conception? And he said both reasons."

Hamilton also presented evidence vitiating the veracity of Southland's purported reason for firing her—that she had premarital sex. John Ennis testified at deposition that, even though Hamilton committed the sin of premarital sex, "[i]f, in fact, she would have said to us I'm sorry that I've sinned against the Lord and this school, we would not be here. We could have gone in another total direction. . . . [But] I never heard her say she was sorry." But Hamilton testified that after she told the Ennises about her pregnancy:

> I became afraid that I had done something horrible. And I went to God in prayer, and my husband and I both together, and asked for forgiveness. And I expressed that to Mr. Ennis. Hopefully, you know, letting him know that I, you know, was remorseful for what had—you know, if I've done something so horrible against God. And that God had forgiven me, and I just wanted him to, if, you know, it was such a horrible thing. But it didn't make a difference.

So, her testimony contradicted John Ennis' testimony that he had never heard her say she was sorry and that he would not have fired her if she had. For that and the other reasons we have discussed, Hamilton has established a genuine issue of material fact about the reason that Southland fired her. The ultimate issue is one for a jury to decide.

10

## III.

We **REVERSE** the district court's grant of summary judgment in favor of Southland on Hamilton's Title VII pregnancy discrimination claim and **REMAND** for further proceedings consistent with this opinion.