[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11814
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-03748-ODE


FIDELITY & GUARANTY LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

versus

CAROL THOMAS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 11, 2014)

Before CARNES, Chief Judge, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Carol Thomas, proceeding pro se, appeals the district court's decision

granting summary judgment to Fidelity & Guaranty Life Insurance Company.  The

district court declared Thomas' insurance policy void because she made material misrepresentations on her application to reinstate the policy. Thomas contends that was error because the record showed that her policy with Fidelity never lapsed, and thus any misrepresentations on her application were not material.

I.

In January 2008 Thomas and her husband, Stillman Cook, purchased a life insurance policy for Cook that named Thomas as the sole beneficiary. The couple paid the policy's monthly premiums by having payments automatically debited from a checking account in Thomas' name. On August 25, 2010 Fidelity did not receive Thomas' monthly payment because the funds in her checking account were too low. Thomas missed the September and October premium payments for the same reason.

That was a problem because the policy provided that it would terminate if Thomas failed to make a premium payment within thirty-one days of its due date (the termination-for-nonpayment provision).[1] Fidelity sent Thomas and Cook several letters in August through early October notifying them of the missed payments and warning them that the policy would lapse if the outstanding premiums were not paid. On October 19, 2010 Thomas mailed Fidelity a check for

---

[1] The policy stated: "We will allow a 31 day grace period after the premium due date to pay each premium after the first. This certificate remains in effect during any grace period. If a premium is not paid by the end of that period, this certificate will terminate as of the premium due date."

2

$205.11, but that check bounced due to insufficient funds.  On November 2, 2010 Fidelity mailed Cook a form entitled "Notice of Lapse" stating that the policy had lapsed effective November 2, 2010.  The notice also included a copy of an application for reinstatement of the policy.  On December 9, 2010 Fidelity sent a letter to Cook explaining that Fidelity had closed the reinstatement process because Cook had not submitted a proper application along with the missing payments.[2]

But Fidelity had not firmly shut the door on the reinstatement process.  In February 2011 Thomas and her insurance broker had a three-way phone call with an unidentified Fidelity agent.  During the call, Thomas explained that she missed her payments in late 2010 because she switched banks and forgot to alert Fidelity to the change.  According to Thomas, the Fidelity agent told them that the policy would not lapse if, by the end of March, Thomas paid her January and February premiums along with a six-month advance payment.[3]  The agent also advised Thomas to submit an application for reinstatement just in case her payment did not

---

[2] There were other communications in 2010, including several more letters sent by Fidelity and a few calls that Thomas made to the company.  We need not recount all those communications because they do not change the basic facts:  (1) Thomas did not make timely premium payments for August, September, or October of 2010; (2) Fidelity sent several notices to Cook and Thomas warning them that the policy would lapse; (3) Fidelity declared the policy lapsed on November 2, 2010; and (4) Fidelity closed the reinstatement process on December 9, 2010.

[3] Neither of the affidavits that Thomas submitted explains what, if anything, the Fidelity agent said about her missed payments from August through December of 2010.

arrive by March 31, so she did.  In mid-March Fidelity received both Thomas'

application for reinstatement and checks for $1,640.88 and $205.11.[4]

One of the reinstatement application's questions asked whether the person

covered by the policy had been diagnosed with cancer in the last five years.

Thomas answered that Cook had not.  That was a misrepresentation because Cook

had been diagnosed with lung cancer in December 2010.  Fidelity sent a letter to

Cook on March 25, 2011, reinstating the policy effective March 24, 2011.  Cook

passed away in May 2011, and Thomas made a claim under the policy in June

2011.

After a short investigation into Thomas' claim, Fidelity determined that she

had made several material misrepresentations in her reinstatement application.  In

November 2011 Fidelity filed a diversity suit in federal district court seeking to

rescind the policy under Georgia Code § 33-24-7.  The Georgia statute provides,

among other things, that insurers may rescind a contract where the insured makes a

material misrepresentation in her application for insurance.  See, e.g., Lee v.

Chrysler Life Ins. Co., 419 S.E.2d 727, 728–29 (Ga. Ct. App. 1992) (holding that

failure to disclose a visit to a doctor based on a diagnosis of cancer, where the

application asked if such a visit occurred in the last six months, voided the policy

at issue under Ga. Code Ann. § 33-24-7(b)(2)).  Fidelity moved for summary

---

[4] Apparently the second check was to cover the March 2011 premium.

4

judgment, arguing that Thomas' policy had lapsed in 2010, and that Fidelity had

reinstated her policy in March 2011 based on material misrepresentations in her

reinstatement application.  Thomas did not dispute that her answers on the

application were false, or that those answers were material to Fidelity's decision to

reinstate her policy.  Instead she contended that the policy had never lapsed, which

meant the policy was not reinstated based on her March 2011 application, and thus

any misrepresentations she made in that application were immaterial.  The crux of

her argument was the three-way phone call with the Fidelity agent in February

2011.  Thomas argued that the deal struck with the Fidelity agent had waived

Fidelity's right to cancel the policy based on her missed payments in 2010.

The district court granted summary judgment for Fidelity.  The court

determined that the evidence in the record showed that the policy had lapsed due to

nonpayment in 2010.  It also concluded that Thomas had not presented any

evidence that the Fidelity agent with whom she spoke in February 2011 had

authority to waive that lapse.  This is Thomas' appeal.[5]

---

[5] In November 2013 this Court took notice of the fact that the complaint in the district court had not alleged Fidelity's state of incorporation and thus our subject-matter jurisdiction under 28 U.S.C. § 1332 was in doubt.  See Am. Motorists Ins. Co. v. Am. Emp'rs. Ins. Co., 600 F.2d 15, 16 & n.1 (5th Cir. 1979) (requiring a complaint asserting diversity jurisdiction in a case involving a foreign corporation to allege the specific state or states where the corporation (1) is incorporated and (2) has its principal place of business); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981).  Fidelity then filed a motion seeking leave to amend its complaint to allege that it is incorporated in Maryland and its principal place of business is located in Maryland.  Thomas opposed Fidelity's motion, but Fidelity does not

II.

We review de novo a district court's decision to grant summary judgment, drawing all reasonable inferences and reviewing the record in the light most favorable to the nonmoving party.  See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The only way that Thomas could have survived summary judgment is if her agreement with the Fidelity agent in February 2011 waived the termination-for-nonpayment provision.  Thomas did not present any evidence that she made timely payments in August through December 2010, nor does she deny that missing those payments triggered the policy's termination-for-nonpayment provision.  She also does not dispute that, if the policy did lapse in 2010, the answers she gave in her reinstatement application in March 2011 were material misrepresentations.  So Fidelity is entitled to summary judgment unless Thomas presented evidence raising a genuine issue as to whether the policy actually lapsed.  Cf. Smith v. Nat'l Life & Accident Ins. Co., 16 S.E.2d 763, 764–65 (Ga. Ct. App. 1941) (indicating that a

---

need her permission to amend the jurisdictional defect in its complaint.  See D. J. McDuffie, Inc. v. Old Reliable Fire Ins. Co., 608 F.2d 145, 146–47 (5th Cir. 1979).  Thomas also did not contradict the evidence that Fidelity presented showing that it was incorporated in Maryland. We now grant Fidelity's motion and conclude that we have jurisdiction to hear this appeal.  See 28 U.S.C. § 1653; Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ., 663 F.3d 1304, 1305 (11th Cir. 2011).

policy must have lapsed in order for representations in the reinstatement application to be material).  We thus turn to Thomas' account of the February 2011 phone call and ask whether it raises a genuine issue as to whether Fidelity waived the termination-for-nonpayment provision.

Even accepting Thomas' account of the deal she struck with the Fidelity agent, that agreement did not prevent the policy from lapsing in 2010.  In Georgia "oral statements by an agent of an insurance company generally cannot bind the insurance company."  Fowler v. Prudential Prop. & Cas. Ins. Co., 449 S.E.2d 157, 158 (Ga. Ct. App. 1994) (alteration omitted).  The policy here stated that the terms of the general policy, which included the termination-for-nonpayment provision, remained in effect unless one of a specified group of top executives in Fidelity's home office changed or waived a term and did so in writing.[6]  Thomas did not present any evidence that the Fidelity agent on the three-way phone call was one of those executives from the home office who had authority to change or waive the terms of the general policy.  Nor did she present any evidence that the agent's offer was reduced to writing.  So the February 2011 phone call did not waive the termination-for-nonpayment provision.  See id. (affirming rescission in similar circumstances); see also Garrett v. Life Ins. Co. of Ga., 471 S.E.2d 262, 265–66

---

[6] The policy stated:  "Only the President, the Secretary, or a Vice President in our Home Office can agree to change or waive any provisions which are part of the entire contract.  The change or waiver must be in writing."

(Ga. Ct. App. 1996) (insurance applicant was not justified in relying on an insurance agent's statements where the application stated that no agent could waive the policy's terms).  Thomas therefore did not raise a genuine issue as to whether the policy had lapsed, which means that Fidelity is entitled to judgment as a matter of law.

**AFFIRMED.**