[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14166
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cv-62283-WPD

FRANK P. MIELE,
REGINALD CARNICK, II,

Plaintiffs-Appellants,

versus

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON,
d.b.a. Sea Wave Yacht,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 17, 2014)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs-appellants Frank Miele and Reginald Carnick (collectively, the "plaintiffs") appeal the district court's grant of summary judgment in favor of defendant-appellee Certain Underwriters at Lloyd's of London ("Lloyd's"). The plaintiffs sued after Lloyd's denied coverage under the plaintiffs' marine insurance policy. After careful review of the briefs and the record, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A.    The Sinking of the Blue Side Up

In 1999, Plaintiffs Miele and Carnick became joint-owners of a 32-foot Luhrs nautical vessel, Blue Side Up. Defendant Lloyd's is an insurer doing business in Florida under the names Atlass Special Risks, Inc. ("Atlass Insurance") and SeaWave Yacht Insurance.

On October 15, 2010, the plaintiffs renewed the Sea Wave Yacht Insurance policy (the "policy"), which they maintained on the Blue Side Up. Although the policy was issued under the Atlass Insurance name, the policy stated that it was "100% underwritten by Certain Underwriters at Lloyds of London." The policy provided insurance for, inter alia, damages to the hull up to $92,000, and for loss of personal effects up to $2,500. After the October 2010 renewal, the policy was in effect until October 16, 2011.

On June 18, 2011, while docked, the Blue Side Up sank. Two days later, the plaintiffs filed a claim under the policy. Lloyd's hired Stewart Hutcheson, a

2

marine surveyor, to inspect the sunken vessel on Lloyd's behalf.  Hutcheson did so and determined that the boat sank because water entered it through a "degraded and rotten" air conditioning hose.

## B.    Lloyd's Denial of the Plaintiffs' Claim for Coverage

In light of Hutcheson's conclusion, defendant Lloyd's denied the claim.  In a letter to the plaintiffs, Lloyd's stated that it "was determined the vessel sank due to a deteriorated thru hull fitting and an inoperable bilge pump" and that the policy "contains an exclusion which is applicable to this situation."  Lloyd's letter referenced "Exclusion C," which provides that "[t]his insurance does not cover losses and or damages arising (whether incurred directly or indirectly) from . . . :"

> C.    The cost of repairs or replacing any part of **Your Boat** by reason of wear and tear, gradual deterioration, osmosis, wet or dry rot, corrosion, weathering, marring, scratching, denting, vermin, pets or marine life, or electrolytic or galvanic action;

## C.    The Plaintiffs' State Court Complaint and Removal

After receiving the denial letter, the plaintiffs Miele and Carnick filed a verified complaint against defendant Lloyd's in Florida state court.  The verified complaint requested a declaratory judgment that: (1) Lloyd's did not comply with Florida law when it investigated the sinking of the boat, thereby entitling the plaintiffs to coverage on their claim; and (2) Lloyd's "breached the contract to provide insurance to Plaintiffs . . . by failing and refusing to pay them pursuant to

the terms of the" policy.  After service, Lloyd's removed the state court case to the federal district court.

## D.    The Report of Lloyd's Expert, David Wills

During discovery, Lloyd's served notice on the plaintiffs that it expected David P. Wills of Exponent Failure Analysis Associates to testify as an expert at trial.  Lloyd's notice informed the plaintiffs that Wills, a materials and corrosion engineer, had: (1) "reviewed various survey reports of [the Blue Side Up], including both pre-loss and post-loss"; (2) received "a sample of the air conditioning hose from [the Blue Side Up] . . . suspected to have been the cause of the loss"; and (3) "performed scientific testing of the air conditioning hose and issued a report of his findings."

To this notice, Lloyd's attached a copy of Wills's "report of his testing and conclusions" (the "Wills report").  It is undisputed that the plaintiffs received the Wills report on April 1, 2013, within the deadline for the disclosure of expert witnesses.

The Wills report contained a section labeled, "Conclusions," which discussed how the air conditioning hose had cracks and a fracture that had developed over a period of time.  In that section, Wills wrote that his "inspections and testing . . . revealed a stepped, jagged profile where the fracture surface and the hose exterior intersect" and that "[t]his pattern [was] present as a result of

4

numerous small parallel surface cracks in the hose cover joining together over some period of time to form a lengthy fracture front." Wills noted that he "did not determine the age of the hose," but that "[t]he surface cracks" in the hose "suggest the hose has been in service for a significant time and has reached the end of its service life."

### E.    Lloyd's Summary Judgment Motion

After discovery ended, Lloyd's filed a motion for summary judgment and attached evidentiary materials, including a declaration of Lloyd's expert, Wills (the "Wills declaration"). The plaintiffs did not receive the Wills declaration during discovery but received it with Lloyd's motion for summary judgment. In the Wills declaration, the expert witness stated essentially what he had said in the Wills report. The Wills declaration stated: "It is my opinion, based upon testing performed by me, that the fracture of the subject air conditioning hose occurred over a period of time and not as a result of a traumatic event."

### F.    The Plaintiffs' Response and Motion to Strike

The plaintiffs opposed the summary judgment motion and filed a motion to strike the Wills declaration. In the motion to strike, the plaintiffs argued that Lloyd's did not disclose during discovery Wills's above-quoted conclusion and that the "late assertion" was "unavoidably and materially prejudicial." Although they undisputedly received the Wills report during discovery, the plaintiffs argued

5

that the Wills report did not contain Wills's conclusion regarding the reason for the fracture in the air conditioning hose.

## G.     The District Court's Order

The district court denied the plaintiffs' motion to strike and granted Lloyd's motion for summary judgment.  As for the motion to strike, the district court concluded that: (1) the statements in the Wills report were materially similar to those in the Wills declaration, especially as to the fracture of the air conditioning hose occurring over a period of time; (2) the plaintiffs received the Wills report during discovery and within the deadlines; and (3) therefore, the Wills declaration did not contain previously undisclosed conclusions.  As for the motion for summary judgment, the district court determined that: (1) there were no factual issues regarding the cause of the boat's demise, which was the fracture of the air conditioning hose; (2) the sinking resulting from the air conditioning hose fracture fell under Exclusion C of the policy; and (3) Exclusion C excluded losses and damages caused (directly or indirectly) by the cost of repair of a part—the air conditioning hose—by reason of wear and tear or gradual deterioration.

The plaintiffs appealed.

## II.  DISCUSSION

## A.     Motion to Strike

6

The first issue is whether the district court properly denied the plaintiffs' motion to strike the Wills declaration.[1]  The plaintiffs filed their motion to strike pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.  Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

The record amply establishes that the plaintiffs learned during discovery all of the information and opinions reflected in the Wills declaration.  Neither party disputes that the plaintiffs received the Wills report within the discovery deadlines.  As the district court explained, these conclusions, reflected in the Wills report, were "materially similar to the statement in the Wills [d]eclaration that 'the fracture of the subject air conditioning hose occurred over a period of time.'"

Accordingly, Lloyd's failure to provide the plaintiffs with the Wills declaration until after the close of discovery was harmless, as the plaintiffs had received the Wills report, and the Wills report contained the same conclusions.  Thus, the district court did not abuse its discretion by denying the plaintiffs' motion to strike.

## B.    Motion for Summary Judgment

---

[1]We review a district court's denial of a motion to strike for an abuse of discretion. Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1337 (11th Cir. 2000).

Next, we consider whether defendant Lloyd's was entitled to summary judgment as to all claims.[2]  There is no dispute that the boat sank because of a fracture in the air conditioning hose.[3]  Moreover, there is no genuine issue of material fact that the cause of the air conditioning hose was normal wear and tear, as expert Wills twice stated.  Although the plaintiffs disputed Wills's conclusion, they offered no evidence to support an alternative explanation for the hose fracture.

We recognize that the plaintiffs did file affidavits by Chris Jackson and Robert J. Scott.  In his affidavit, Chris Jackson stated that he: (1) knew the plaintiffs for 13 years; (2) had been on their boat, Blue Side Up, many times; and (3) believed that "throughout their ownership, [the plaintiffs] have maintained the vessel in above average or excellent condition."  Similarly, in his affidavit, Robert J. Scott stated that he: (1) knew the plaintiffs for 6 years; (2) "performed extensive maintenance on their vessel, Blue Side Up"; and (3) believed that "throughout their ownership, [the plaintiffs] have maintained the vessel in excellent condition compared to the majority of boat owners."  Notably, neither affidavit included an

---

[2]We review de novo a district court's grant of summary judgment and draw all inferences and review all evidence in the light most favorable to the non-moving party.  Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012).  "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id. (internal quotation marks omitted).

[3]The fracture in the air conditioning hose allowed water to enter the boat, causing the entire vessel to sink.  The marine surveyor who inspected the boat, Hutcheson, explained that "if [the air conditioning] hose is removed or degraded or cut, water will naturally flow into the bilge spaces."

opinion—expert or lay—as to the cause of the hose fracture.  Thus, the district court properly concluded that these affidavits did not create a genuine issue of material fact as to why the fracture in the hose developed, and thus why the boat sunk.

Alternatively, the plaintiffs argue that, even if the facts are undisputed, that summary judgment was inappropriate because the district court incorrectly concluded that Exclusion C applied here.  The plaintiffs argue that Exclusion C was ambiguous and should be construed as excluding only the cost to replace the single air conditioning hose part itself and not to the cost of replacing "the entire boat" if any part failed due to wear and tear and caused the sinking.

In this diversity action involving the interpretation of an insurance contract, we apply Florida law.  Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990).  Under Florida law, we interpret the policy pursuant to its "plain meaning, with any ambiguities construed against the insurer and in favor of coverage."  U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007).  A policy provision is ambiguous when "the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage."  Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1086 (Fla. 2005).  Moreover, "[a] provision is not ambiguous simply because it is complex or requires analysis."  Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007).  Thus,

9

"if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Id. (internal quotation marks omitted).

Exclusion C is not ambiguous. It excludes coverage for losses and damages arising directly or indirectly from the cost of repairing or replacing a part, here the air conditioning hose, due to wear and tear. Thus, Exclusion C excluded from coverage losses caused, directly or indirectly, by "wear and tear" and it is undisputed that wear and tear to the air conditioning hose caused the fracture and the fracture caused the boat to sink.

We reject the plaintiffs' claim that the exclusion reaches only the cost of replacing the hose part itself. The policy language is much broader and applies to all losses and damages arising directly or indirectly from a need to replace a single part—the air conditioning hose—due to wear and tear to that part. As the district court concluded, the vessel is nothing but a sum of its parts and Exclusion C excludes coverage for any single part or collection of parts if the losses or damages were caused by wear and tear of a part. In this case, the need to replace one part due to wear and tear indirectly gave rise to a need to replace all parts. The fact that the entire boat is now inoperable (as opposed to only some part of it) does not bring the plaintiffs' claim out from under Exclusion C. Accordingly, the district court properly granted summary judgment to defendant Lloyd's on the plaintiffs'

10

claim for a declaratory judgment that Lloyd's breached its contract with the plaintiffs.[4]

## III.  CONCLUSION

In light of the foregoing, we affirm the district court's grant of summary judgment to the defendant Lloyd's.  We also deny defendant Lloyd's pending motion for damages under Rule 38 of the Federal Rules of Appellate Procedure. We conclude that the issues raised by the plaintiffs in this appeal are not frivolous and thus Rule 38 does not entitle defendant Lloyd's to damages.

**AFFIRMED.**

---

[4]To the extent that the plaintiffs also appeal the award of summary judgment to Lloyd's on their claim for a declaratory judgment that Lloyd's conducted an inadequate investigation, we affirm on that issue, too.  The district court correctly held that this claim was moot in light of its conclusion that Lloyd's owed no coverage under the policy.