[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12427
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-62467-CMM

TRI-LADY MARINE, LTD.,
a Marshal Island Company,
d.b.a. Triumphant Lady,

Plaintiff - Appellant,

versus

AQUA-AIR MANUFACTURING,
a division of James D. Hall Co, a Florida Company,

Defendant - Cross Defendant - Appellee,

ELITE MARINE YACHT SERVICES, LLC,

Defendant - Cross Claimant - Appellee,

BISHOP MECHANICAL SERVICES, LLC,

Defendant.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

(January 23, 2019)

Before WILLIAM PRYOR, MARTIN and NEWSOM, Circuit Judges.

PER CURIAM:

Tri-Lady Marine, Ltd., appeals the summary judgment against its amended complaint alleging a breach of an implied warranty of merchantability by Aqua-Air Manufacturing and Elite Marine Yacht Services, LLC. Tri-Lady does not challenge the entry of summary judgment against its claims of breach of the express warranty of merchantability and of breach of contract, so we deem those claims abandoned. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012). The district court ruled that Tri-Lady failed to prove that the installation of an improperly-sized low pressure switch in a marine chiller unit manufactured by Aqua-Air and sold by Elite Marine caused water damage to the Triumphant Lady, a yacht Tri-Lady owned. We affirm.

## I. BACKGROUND

Triumphant Lady used a chilled water system to control its ambient temperature. The system required several chilling units that contained evaporator heat exchangers that were attached to a water inlet hose and a water outlet hose.

2

Water that warmed while circulating through the air system for the yacht entered the evaporator heat exchanger, which cooled and recirculated the water.

In the summer of 2015, Tri-Lady purchased an Aqua-Air chilling unit from Elite Marine and had it installed on the yacht by Bishop Mechanical Services, LLC. In October 2015, the Aqua-Air chilling unit failed. Water inside the evaporator heat exchanger froze, which caused leaking in the chilled water piping throughout the yacht.

Tri-Lady filed a complaint in a Florida court against Aqua-Air, Elite Marine, and Bishop Mechanical. After Bishop Mechanical removed the action to the district court, *see* 28 U.S.C. §§ 1441, 1446, Lloyd's of London intervened as a subrogee of Tri-Lady and filed a complaint against Aqua-Air, Elite Marine, and Bishop Mechanical.

Lloyd's and Tri-Lady relied on a report prepared by Charles Volk III of SEA, Ltd., that identified two *potential* causes of the chiller unit failure. First, Volk reported that "Aqua Air installed a low pressure switch to control the temperature range of the evaporator" heat exchanger with settings "lower than recommended by the compressor manufacturer, [Emerson Climate Technologies,] creating a condition in which the evaporator could freeze and breach, resulting in a chiller failure." Volk explained that the low pressure switch was pre-set to operate between 43.5 pounds per square inch and 23.5 pounds per square inch, but

3

Emerson Technologies recommended that the heat evaporation heat exchanger maintain a temperature between 45 to 35 degrees Fahrenheit, which equated to "operating between 70 psi and 56 psi." Second, Volk reported that reversed water hoses "resulted in chilled water reaching its coldest temperature at the top of the evaporator, on the opposite end of the freeze protection switch," and "resulted in a condition in which the evaporator could freeze and breach." Volk explained that the reversed connections resulted in the freeze protection switch "measuring [the warmer] water returning from the vessel air handlers and not chilled water as it exited the evaporator."

Aqua-Air and Elite Marine moved separately for summary judgment. Both companies argued that the improper installation of the chiller unit caused the damage to the Triumphant Lady. Elite Marine also argued that, even if the low pressure switch was defective, it could not be the proximate cause of the property damage because the switch served to "trigger a shutdown of the compressor if there is a loss of refrigerant," not to "prevent[] freezing of the evaporator."

Lloyd's filed a declaration of Volk to establish that the installation of the improperly-sized low pressure switch caused the water damage. Volk declared that "[e]ven with Bishop Mechanical's reversed chilled water connections, had Aqua Air installed a properly-sized low pressure switch matching the compressor manufacturer's recommendations, the evaporator would not have frozen." Volk

4

quoted from an engineering bulletin issued by Emerson Technologies in April of 2014 that "[t]he low pressure cut out setting will depend on the application type and minimum expected evaporating temperature" and "should be selected to prevent . . . system failure modes, such as . . . frozen heat exchangers in chiller systems."

When the parties later deposed Volk, he testified that the chiller unit failed because of freezing caused by the reversal of the water hoses. Volk stated that the low pressure refrigerant switch "was sized allowing refrigerant temperatures to be below freezing, which indicat[ed] to [him] it was not considered as a freeze protection device for the evaporator." Volk explained that "[t]he low pressure switch operates on the refrigerant side of the [chiller] system" "to protect the compressor," and he "didn't find any evidence to suggest the compressor was damaged." Volk explained that the low pressure switch and freeze protection switch were "independent devices, and . . . connected in series." Based on the construction of the chiller unit, Volk stated that "[t]he primary protection device[] of the evaporator would be the freeze protection switch" and the "switch in the chiller that was manufactured by Aqua-Air presented the only fail-safe in that unit to prevent it from freezing." Volk stated that the freeze protection switch "opened at a temperature" around "40 degrees," but because "the [water] lines were switched, the freeze protection switch . . . measur[ed] the warm water coming in

5

from the vessel" instead of "measuring water in the coldest location and shutting down the chiller before a temperature below 38 degrees could be reached." Volk testified that, but for the reversed water hoses, "[t]he freeze protection switch would have sent a signal to the control panel to shut down that chiller when it measured a temperature of approximately 40 degrees." He responded "correct" to the question whether the freeze protection switch "would have sent that signal regardless of the condition of the low pressure switch."

After Lloyd's settled with Aqua-Air, Elite Marine, and Bishop Mechanical, the district court entered summary judgment in favor of Aqua-Air and Elite Marine and against Tri-Lady. The district court found that Volk's declaration was "the only evidence" that the installation of an improperly-sized low pressure switch caused the evaporator heat exchanger to fail. The district court acknowledged that it could have, but declined to, "disregard the statements in Mr. Volk's declaration" because he later "contradicted his declaration" during his deposition. Because Volk "abandoned . . . the opportunity at his deposition to support" his opinion that the low pressure switch caused the chiller unit to fail, the district court determined that Volk's declaration presented "at best a 'mere scintilla of evidence' which [could not] defeat Aqua-Air's and Elite's motions for summary judgment."

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Tri-Lady argues that the inconsistencies in Volk's declaration, report, and deposition create a material factual dispute about whether the low pressure switch installed by Aqua-Air caused its evaporator heat exchanger to freeze. Aqua-Air and Elite Marine respond that the district court correctly credited Volk's later deposition testimony as having "abandoned" his earlier declaration. We agree with Aqua-Air and Elite Marine.

The district court did not err. Tri-Lady failed to prove that a dispute of material fact existed that the damage to its yacht was proximately caused by Aqua-Air and Elite Marine. *See Kohler v. Medline Indus., Inc.*, 453 So. 2d 908, 909 (Fla. Dist. Ct. App. 1984). Undisputed evidence established that the water hoses for the chilling unit were plumbed in reverse, and Volk testified that the reversed connections resulted in outflowing cold water bypassing the freeze protection switch and causing the evaporator heat exchanger to freeze, a process that the low pressure switch did not regulate. In contrast with his earlier declaration, Volk's

7

deposition testimony clarified that, of the two factors that he earlier reported "could" have caused the damage, the reversed water connections alone made the evaporator heat exchanger freeze and breach. Volk abandoned his declaration that "the evaporator would not have frozen . . . had Aqua Air installed a properly-sized low pressure switch." In the light of Volk's later deposition testimony, Tri-Lady lacked "sufficient evidence favoring [it] for a jury to return a verdict" in its favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Aqua-Air and Elite Marine.

8