[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10138
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00200-CDL


RODERICK JOLIVETTE,

Plaintiff-Appellant,

versus

CITY OF AMERICUS, GA,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(October 4, 2019)

Before WILLIAM PRYOR, MARTIN and BRANCH, Circuit Judges.

PER CURIAM:

Roderick Jolivette appeals the summary judgment against his complaint that the City of Americus, Georgia, refused to hire him as Fire Chief because he was African-American and in retaliation for suing his former employer for unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and of his right to the free and equal benefit of all laws, *id.* § 1981. Jolivette also complained about being subject to different terms and conditions of employment, *id.* §§ 2000e-2(a), 2000e-3(a), 1981, but he has abandoned any challenge to the dismissal of that claim. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012). The district court ruled that the legitimate, nondiscriminatory reasons the City proffered for hiring Roger Bivins, a Caucasian man, were not pretexts for discrimination and retaliation. We affirm.

We review *de novo* a summary judgment. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An employer is prohibited from discriminating against an applicant because of his race or because he has opposed an unlawful employment practice. 42 U.S.C. § 2000e-2(a)(1), 3(a); *id.* § 1981. Jolivette relies on circumstantial evidence to

2

prove his claims of discrimination and retaliation under the burden-shifting

approach provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The City presented evidence that it had legitimate, nondiscriminatory

reasons for hiring Bivins instead of Jolivette. The City submitted an affidavit from

its final decisionmaker, Steve Kennedy, who stated that he hired Bivins based on

his "combination of education, training, and experience," his "overall experience

and qualifications," his "intimate knowledge of the [Americus] Fire Department

and its personnel," his "enthusiasm for the job," his "performance during his

interviews and receipt of higher interview scores" and his "efficiency, positivity,

and ambitiousness." Bivins served the Department for 15 years as a firefighter,

engineer, and captain, followed by 10 years as its Battalion Chief. His resume also

listed numerous certifications that he had acquired as a fire officer, a fire control

instructor, and a safety officer and for emergency training and planning.

As Kennedy averred, the interviewers overwhelmingly preferred Bivins.

Interviewers consisted of local officials, the outgoing Fire Chief, firefighters, and

fire chiefs from other locales. Of the 28 interviewers who submitted opinions by

email, 20 ranked Bivins as their choice for Fire Chief, two ranked Bivins as tied for

the position, and none ranked Jolivette as their first choice. The interviewers

favored Bivins because he was "rooted in Americus," "his work history was more

stable than any other candidate," "[h]e already ha[d] a pulse on the department"

and an "aware[ness] of the current status and . . . needs . . . to move the department forward," he collaborated with other city agencies, and he had strategic long-term plans for the Department and its employees. The interviewers also commended Bivins for "always striving to better the dept. and the city," "work[ing] his way up through the Americus Fire Department," "work[ing] hard to maintain respect and trust," "tak[ing] the initiative to seek further education," and being "passionate about his job . . . ."

The City was entitled to rely on subjective hiring criteria in making its hiring decision. "A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000). Kennedy and the interviewers favored Bivins based on his stable employment history with the City, his enthusiasm, and his strategic plans for and intention to remain with the Department. *See id.* at 1033–34. And the interviewers relied on similar subjective factors to give Jolivette a low ranking. Interviewers disfavored Jolivette because of his evasive responses, his shortsighted one-year plan for the City, and his intent to retire in five years. Even the two interviewers who expressed a preference for hiring an African-American candidate ranked Jolivette last due to his demeanor and his responses.

4

The evidence provided by the City required Jolivette to prove that the reasons given for the hiring decision were pretextual. *See Alvarez*, 610 F.3d at 1264. Jolivette could not "recast [any] reason but [had to] meet it head on and rebut it." *See Holland v.* Gee, 677 F.3d 1047, 1055 (11th Cir. 2012) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004)). He had to identify "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale." *Id.* at 1055–56 (internal quotation marks and citation omitted).

Jolivette argues that the disparity in qualifications creates a material dispute about whether the criteria used by the City was pretextual. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) ("[Q]ualifications evidence may suffice . . . to show pretext."). Jolivette cannot just "assert[] baldly that [he] was better qualified . . . ." *Wilson*, 376 F.3d at 1090. He must "show that the disparities between [Bivins's] and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Bivins] over [him]." *See Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks and citation omitted).

Jolivette argues that the reasons proffered for hiring Bivins are unworthy of credence because he lacked the academic credentials to serve as Fire Chief, but the policies of the City allowed it to hire Bivins based on his "relative qualifications."

5

*See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007). Although Jolivette possessed a bachelor's degree, as required in the job posting, the City policies weighed equally candidates who possessed an "equivalent combination of education, training, and experience." Dee Jones, the human resources director for the City, testified that Bivins qualified for the position of Fire Chief "because of the[] totality" of his skills, experience, and education, as provided for in the job posting and "our job description." Jolivette does not dispute that Bivins possessed skills, experience, and abilities that "substitute[d] for a lack of a college degree." *See Springer*, 509 F.3d at 1349.

Jolivette likens his situation to *Bass v. Board of County Commissioners*, 256 F.3d 1095 (11th Cir. 2001), and *Vessels v. Atlanta Independent School Systems*, 408 F.3d 763 (11th Cir. 2005), but his comparison is inapt. The plaintiffs in *Bass* and *Vessels* proved pretext by establishing that the hirees were unqualified. 256 F.3d at 1107; 408 F.3d at 772. In contrast to those hirees, Bivins was qualified to serve as Fire Chief. Jolivette failed to prove that the reason proffered for hiring Bivins—his combined education and experience—is false.

Jolivette also argues that the reasons the City gave are unworthy of credence because it argued on summary judgment that he was unqualified due to lacking certifications as a "Fire Engineer" and an "Advanced Emergency Medical Technician," but the City did not reject Jolivette on the basis he was unqualified.

6

To the contrary, Dee Jones testified that "[t]he specialized training, . . . professional affiliations, education [and] experience" listed on Jolivette's resume was impressive. And Jones responded, "no," when asked if "there [was] any question whether Mr. Jolivette met the preferred qualifications of the job."

We **AFFIRM** the summary judgment in favor of the City.