**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13573

Non-Argument Calendar

_____

ALICIA GOOLSBY,

                                               *Plaintiff-Appellant,*

*versus*

CITY OF MONROE,

BETH THOMPSON,
    individually, and in her official capacity as,
    Finance Director of the City of Monroe,

LES RUSSELL,
    individually, and in his official capacity as,
    Human Resources Director of the City of Monroe,

                                               *Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:22-cv-00082-CAR

_____

Before WILLIAM PRYOR, Chief Judge, and GRANT and WILSON, Circuit Judges.

PER CURIAM:

Alicia Goolsby appeals the dismissal of her claims of intentional race discrimination and retaliation against Beth Thompson and Les Russell. *See* 42 U.S.C. § 1981. She also appeals the summary judgment in favor of the City of Monroe and against her complaint of racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. No reversible error occurred. We affirm.

## I. BACKGROUND

The City of Monroe hired Goolsby, an African-American woman, as a cashier in March 2017. During her tenure as a cashier, she often performed customer service duties. In August 2019, shortly before she ended her employment with the City, Monica Simmons, Goolsby's then-supervisor, offered Goolsby a customer service position that paid more than her cashier position. Goolsby accepted.

Two weeks into Goolsby's new position, the City's finance director, Beth Thompson, removed Goolsby from the position and returned her to her cashier position. Goolsby filed a grievance and spoke with the City's human resources director, Les Russell, who told her that Simmons did not have the authority to offer Goolsby the customer service position. Goolsby also spoke with Thompson, who was unaware that Simmons had offered Goolsby the position.

The City posted the customer service position and later removed it. Goolsby complained, and Russell and another City employee conducted an internal investigation. The City held a grievance hearing in November 2019, and a month later, after Goolsby and two other City employees had interviewed for the position, Goolsby learned that one of the other City employees who had interviewed for the position, Amy Dire, a white woman, had been chosen for the customer service position. Goolsby then filed her first charge of discrimination with the Equal Employment Opportunity Commission, which the Commission dismissed. She did not file suit against the City after the dismissal.

When Goolsby returned to her position as cashier, she was no longer allowed to work in customer service. Goolsby's supervisor received complaints from other subordinates about the tense environment between Goolsby and the other cashiers and customer service representatives. A separate investigation by Russell corroborated this poor morale and found a risk of losing City employees due to Goolsby's poor attitude. Goolsby maintained that Russell "and others" were upset that she had filed a charge of discrimination with the Commission. She was written up for emailing the City's mayor about rate and late fee improvement ideas and for falsifying her work hours.

The City fired Goolsby in July 2020 for "making too many mistakes," including having shortages and overages of cash in her deposit bag, which she had been previously warned about as early as April 2018. Goolsby then filed a second charge of discrimination

with the Commission in September 2020. The Commission dismissed the charge in May 2022. Goolsby then sued the City, Thompson, and Russell in August 2022. She alleged that Thompson and Russell individually violated laws that prohibit racial discrimination and retaliation in contracting. *See* 42 U.S.C. § 1981. And she alleged that the City violated Title VII of the Civil Rights Act of 1964, which prohibits racial discrimination and retaliation in employment. *Id.* §§ 2000e-2(m), 2000e-3(a).

Thompson and Russell moved to dismiss Goolsby's claims of racial discrimination and retaliation against them. The district court dismissed those claims for failure to state a claim. It ruled that the complaint contained only "naked assertions of broad discrimination" and failed to identify a specific adverse action, the defendant who took it, or a causal link to the second charge that Goolsby filed with the Commission.

The City moved for and was granted summary judgment on Goolsby's Title VII racial discrimination and retaliation claims against it. The district court ruled that Goolsby failed to establish a prima facie case of discrimination or retaliation because she neither identified her replacement after she was fired nor similarly situated comparators and failed to establish a causal link between her protected activity and her termination. It ruled that she also failed to rebut the City's legitimate, non-discriminatory reason for her termination—poor performance and co-worker complaints. It also ruled that Goolsby's circumstantial evidence did not suggest a convincing mosaic of intentional discrimination or retaliation.

## II. STANDARD OF REVIEW

We review the dismissal of a claim for failure to state a claim *de novo* and accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *McCarthy v. City of Cordele*, 111 F.4th 1141, 1145 (11th Cir. 2024). We ignore "'[t]hreadbare recitals of the elements of a cause of action' that the complaint supports with only 'conclusory statements.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). We also review a summary judgment *de novo* and draw all reasonable inferences in the non-movant's favor. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in [her] favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III. DISCUSSION

We divide our discussion into three parts. First, we explain that Goolsby failed to state claims of intentional race discrimination and retaliation against Thompson and Russell. Second, we explain that her claims of racial discrimination and retaliation against the City failed under the *McDonnell Douglas* framework. Third, we explain that although an employee can prove racial discrimination and retaliation by her employer with a convincing mosaic of circumstantial evidence, Goolsby failed to do so here.

6                    Opinion of the Court                24-13573

*A. Goolsby Failed to Plausibly Allege Intentional Race Discrimination and Retaliation Claims against Thompson and Russell*

Section 1981 prohibits intentional discrimination in employment contracts based on race. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023), *cert. denied*, 145 S. Ct. 154 (2024). It also prohibits retaliation against employees who allege discrimination. *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452-57 (2008)). And section 1981 "provide[s] for individual liability." *Shotz v. City of Plantation*, 344 F.3d 1161, 1176 (11th Cir. 2003).

Section 1981 claims require the same proof and analytical framework as Title VII claims. *Berry*, 84 F.4th at 1307. To state a claim of racial discrimination, a complaint must allege enough plausible facts "to suggest intentional race discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). To state a claim of retaliation, a complaint must allege enough plausible facts to suggest that the plaintiff engaged in a statutorily protected activity, that she suffered a materially adverse action, and that a causal relationship existed between those two events. *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1176 (11th Cir. 2016).

Goolsby failed to allege sufficient facts to support a reasonable inference of either racial discrimination or retaliation by Thompson or Russell. *See Surtain*, 789 F.3d at 1246; *Moore*, 834 F.3d at 1176. For her former claim, she alleged that they "intentionally discriminated against [her] in the terms and conditions of her

employment based on race" and "treated [her] disparately from other employees on the basis of race." For her latter claim, she alleged that she "engaged in statutorily and constitutionally protected activity by complaining in good faith about [] illegal race discrimination perpetrated by [them]" and that they "retaliated against [her] by taking adverse employment actions against her because she engaged in statutorily and constitutionally protected activity." These conclusory allegations are "[t]hreadbare recitals of the elements of a cause of action" and, without notice of the factual grounds on which they were based, are insufficient to survive a motion to dismiss. *See McCarthy*, 111 F.4th at 1145; *see also Iqbal*, 556 U.S. at 678.

Goolsby argues that she incorporated the allegations that supported her claims by referencing the facts at the beginning of her complaint. But even viewing those facts in the light most favorable to her, we cannot determine the specific actions taken by Thompson or Russell that plausibly suggest either an intent to discriminate against her based on her race or to retaliate against her for engaging in a statutorily protected activity.

*B. Goolsby's Racial Discrimination and Retaliation Claims Against the City Failed Under the* McDonnell Douglas *Framework*

Title VII of the Civil Rights Act of 1964 prohibits employers from intentionally discriminating against an employee with respect to her "compensation, terms, conditions, or privileges of employment, because of [her] race." 42 U.S.C. § 2000e-2(a)(1); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-01 (1973). It also

prohibits employers from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge . . . under [Title VII]." 42 U.S.C. § 2000e-3(a); *see also Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021).

One way an employee can establish discriminatory intent is under the "burden-shifting framework set out in *McDonnell Douglas*." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). First, the employee must establish a prima facie case of intentional discrimination by establishing that she "belongs to a protected class," was "subjected to an adverse employment action," was "qualified to perform the job in question," and that her employer treated her less favorably than "similarly situated employees outside her class." *Tynes*, 88 F.4th at 944. If the employee establishes a prima facie case, her employer may proffer a "valid, non-discriminatory" reason for the adverse action. *Id.* If the employer does so, the employee must prove that the employer's reason was pretext for discrimination. *Id.*

An employee can also establish retaliatory intent under the *McDonnell Douglas* framework. *See Berry*, 84 F.4th at 1307. First, the employee must establish that she "engaged in statutorily protected conduct," "suffered an adverse employment action," and that "a causal relation exists between the two events." *Id.*; *see also Tolar*, 997 F.3d at 1289. If the employee establishes a prima facie case, her employer may proffer a "legitimate, nonretaliatory reason" for the adverse action. *Berry*, 84 F.4th at 1307 (internal quotation marks

omitted). If the employer does so, the employee must prove that the employer's reason was pretext for retaliation. *Id.*

To prove that the employer's reason was pretextual, an employee must "cast enough doubt on its veracity that a reasonable factfinder could find it unworthy of credence." *Id.* (internal quotation marks omitted). If the employer's reason is legitimate, or "might motivate a reasonable employer to act," the employee must address the reason "head on and rebut it," instead of "quarreling with the wisdom of it." *Id.* at 1307-08 (internal quotation marks omitted). She must point out "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the reason. *Id.* at 1308 (internal quotation marks omitted).

We assume without deciding that Goolsby established a prima facie case of intentional racial discrimination and retaliation and consider whether she presented evidence of pretext. The City explained that it fired Goolsby for poor performance and co-worker complaints. This reason might legitimately motivate a reasonable employer to terminate an employee. *See id.* at 1308. So Goolsby had to address it "head on and rebut it." *Id.*

Goolsby failed to create a genuine dispute of material fact regarding whether the City's stated reason for firing her was pretextual. The record establishes that, as early as April 2018, Goolsby began receiving written reprimands for discrepancies with her cash drawer. In December 2019 she was written up for falsifying her time records and for going outside the chain of command by contacting the mayor directly. In January 2020, she was written up for

a discrepancy with her cash drawer. Between March 2020 and June 2020, she was notified three times about discrepancies with her cash bag, although she was not reprimanded.

The record also establishes that, after Goolsby was not chosen for the customer service position, her supervisor received complaints from other subordinates about the tense environment between them and Goolsby. And a separate investigation by Russell confirmed the poor morale among the City's employees and found a risk of losing City employees due to Goolsby's poor attitude. Goolsby failed to create a genuine issue as to whether all the reports, including those that detailed her cash discrepancies, falsified time records, contact with the mayor, and the tense work environment, were false. Nothing in the record suggests that they were. So Goolsby failed to establish a genuine issue of pretext.

Goolsby insists that the City had an "open door" policy and that no one else was "punished" for "communicating freely." But Goolsby received only a warning for contacting the mayor—she was not suspended and received no loss in pay. She also insists that the timing of her termination is "suspicious." But Goolsby was fired in July 2020, nearly six months after she filed her first charge with the Commission. We have explained that "[a] three to four month disparity between [a] statutorily protected expression and the adverse employment action is not enough." *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). The same is true for the six months in elapsed time here.

Moreover, any inference of retaliation based on temporal proximity is undermined by Goolsby's intervening misconduct. The record establishes that between her charge and termination, she had performance issues, including cash discrepancies, falsified time records, and a poor attitude that contributed to an untenable work environment. As we have explained, "intervening . . . employee misconduct can sever the causal inference created by close temporal proximity." *Berry*, 84 F.4th at 1309. And it did so here. In sum, Goolsby had to cast doubt on the City's justification for her termination. None of her evidence would allow a reasonable factfinder to find that the City's stated reason is "unworthy of credence." *Id.* at 1307 (internal quotation marks omitted).

## C. Goolsby Failed to Offer a Convincing Mosaic of Circumstantial Evidence of Racial Discrimination and Retaliation by the City

Goolsby argues that even if her claims fail under the *McDonnell Douglas* framework, she presented a convincing mosaic of circumstantial evidence of intentional racial discrimination and retaliation. Because the ultimate question for Title VII claims is whether a reasonable jury could infer that the reason for the adverse employment action was illegal discrimination or retaliation, the *McDonnell Douglas* framework is but one evidentiary tool that an employee may use to prove discriminatory or retaliatory intent by her employer. *Tynes*, 88 F.4th at 946-47 (discrimination); *Berry*, 84 F.4th at 1310 (retaliation). An employee may also prove such intent with a "convincing mosaic" of circumstantial evidence that creates a reasonable inference of intentional discrimination or retaliation. *Berry*, 84 F.4th at 1310-11; *Tynes*, 88 F.4th at 946.

Goolsby's claims fail. Even viewed as a whole and in the light most favorable to her, Goolsby's circumstantial evidence does not create a reasonable inference of intentional racial discrimination or retaliation. The district court did not err in granting summary judgment against her claims.

## IV. CONCLUSION

We **AFFIRM** the dismissal of the claims against Thompson and Russell and the summary judgment in favor of the City.