[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12306
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cv-80548-DLB

LORETTA BANKS,
for Jonathan C. Hunter,

                                                            Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 21, 2017)

Before TJOFLAT, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Loretta Banks, on behalf of her son, Jonathan Hunter, appeals the district court's order affirming the Administrative Law Judge's ("ALJ") denial of supplemental security income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3).  Banks raises three issues on appeal.  First, she argues that the Appeals Council erred by finding that evidence she submitted after the ALJ hearing did not relate back to the period on or before the ALJ's decision.  Second, Banks asserts that the ALJ improperly evaluated the opinion evidence.  Third, she contends that the ALJ erred in concluding that Hunter's impairments did not meet, medically equal, or functionally equal a listing impairment.

The Appeals Council properly determined that the new evidence Banks submitted did not relate to the period on or before the ALJ's decision.  The new evidence post-dated the decision, stemmed from experiences outside the relevant time period, and described the onset of a new condition.  Second, the ALJ properly evaluated the opinions of Hunter's treating physician, State medical agency consultants, Banks, and Hunter's teacher, assigning appropriate weight to each and evaluating accordingly.  Third, the ALJ did not err in concluding that Hunter's impairments did not meet a listing impairment.  The evidence failed to show he met the criteria of Listing 14.09, and the ALJ did not need to consult an expert on medical equivalence because the evidence sufficiently supported a determination of the claim.  Furthermore, Banks waived her argument that Hunter's impairments

2

medically or functionally equaled a listing impairment by failing to argue the merits, cite authority, or proffer evidence supporting each conclusion. Accordingly, we affirm.

## I.

Banks first argues that the new evidence she submitted to the Appeals Council substantiates the severity of Hunter's mental impairment and is contrary to the weight of the ALJ's findings and conclusions. Banks asserts that the evidence showed that Hunter received treatment for depression, needed additional time for school work, faced limitations in learning, walking, sitting, and breathing, and received extra time to complete assignments and exams. She argues that although she produced the new evidence in the month following the ALJ decision, it relates to Hunter's disability during the relevant time period.

When the Appeals Council refuses to consider new evidence submitted to it and denies review, the decision is subject to judicial review. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). We review *de novo* whether evidence meets the new, material, and chronologically relevant standard. *See id.* at 1321. When the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate. *Id.* When a claimant properly submits new evidence to the Appeals Council, a reviewing court must

consider whether that new evidence renders the denial of benefits erroneous. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).

The Appeals Council must consider new, material, and chronologically relevant evidence that the claimant submits. *Washington*, 806 F.3d at 1320; 20 C.F.R. § 416.1476(b)(1). Evidence is chronologically relevant if it "relates to the period on or before the date" of the ALJ's decision. *See* 20 C.F.R. § 416.1476(b)(1).

We previously recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant. *See Washington*, 806 F.3d at 1322. In *Washington*, we determined that medical opinions based on treatment occurring after the ALJ's decision were chronologically relevant when based on experiences occurring during the time period prior to the ALJ's decision and a review of medical records from the period before the ALJ's decision. *Id.*

The Appeals Council properly determined that the new evidence did not relate to the period on or before the ALJ's decision. The new evidence post-dated the decision, was not based on experiences from the relevant time period, and described the onset of a new condition. *See* 20 C.F.R. § 416.1476(b)(1); *Washington*, 806 F.3d at 1322. Both Dr. Kassover's letter and the 504 Modification Plan were dated after February 18, 2014, and the evidence failed to

4

show the chronological relevance of these documents to the period before the ALJ's decision. *See Washington*, 806 F.3d at 1322. Dr. Kassover's letter merely stated that Hunter was "being seen for depression," without further explanation of when she began seeing Hunter, whether she medically diagnosed Hunter with depression, or whether Hunter suffered from depression prior to the date of the letter. Unlike in *Washington*, evidence failed to indicate that Dr. Kassover based his assessment on experiences occurring during the relevant time period or on her review of medical records from the period before the ALJ's decision. *See* 806 F.3d at 1322. Additionally, even if the letter constituted a medical diagnosis, it described the onset of a new condition after the date of the ALJ decision. While Banks testified at the ALJ hearing that Hunter was "depressed sometimes," a search of the record and notes from Hunter's treating physician did not indicate a medically determinable mental impairment relating to depression through the date of the ALJ's decision. Finally, the 504 Modification Plan was created pursuant to a meeting occurring after the ALJ's decision, and did not state that the accommodations listed were implemented on or before February 18, 2014. Therefore, the Appeals Council properly determined that the new evidence Banks submitted did not relate back to the period on or before February 18, 2014.

II.

Banks argues that although the ALJ purported to accord controlling weight to the opinion of Hunter's treating physician, Dr. Goodman, the ALJ failed to acknowledge Dr. Goodman's statements that Hunter's arthritis resulted in significant and marked functional limitation or Dr. Goodman's concern that Hunter's disease could lead to significant joint damage and progressive loss of function if untreated. She also contends that the ALJ improperly weighted the State agency medical consultants' opinions because the consultants never examined Hunter personally or reviewed Dr. Goodman's treatment notes that post-dated their opinions. Banks further argues that the ALJ improperly concluded that a Function Report completed by Banks and a Teacher Questionnaire completed by Hunter's homeroom teacher showed that Hunter faced no problems in any of the six functional equivalence domains. Banks asserts that the ALJ inadequately weighed the forms because they contradicted the ALJ's conclusion regarding Hunter's domains of movement, manipulating objects, health, and physical well being.

We review the ALJ's decision for substantial evidence, and the ALJ's legal conclusions *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

6

All medical opinions in a claimant's case record must be considered together with other relevant evidence received. 20 C.F.R. § 416.927(b). The testimony of a treating physician deserves substantial or considerable weight unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists where the evidence failed to bolster the doctor's opinion, the evidence supported a contrary finding, or the doctor's opinions were conclusory or inconsistent with their own medical records. *Id.*

State agency medical consultants are highly qualified and considered experts in Social Security disability evaluation. *See* 20 C.F.R. § 416.927(e)(2)(i). The regulations require an ALJ to consider findings and opinions of State agency medical consultants as opinion evidence, except for the ultimate determination about whether a claimant is disabled. *See id.*

There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

The ALJ properly considered the opinion evidence in the record. First, the ALJ accorded controlling weight to Dr. Goodman's opinion, which indicated the weakness of Hunter's grip strength, that he did not need an assistive device to walk independently, and that he may have trouble with sustained manipulation due to involvement of the right wrist. Nonetheless, the ALJ concluded that this did not rise to the level of marked or extreme limitations on Hunter's ability to function.

7

The ALJ did not specifically mention Dr. Goodman's statements that Hunter's arthritis led to significant and marked functional limitation, or indicate Dr. Goodman's concern that Hunter's disease could lead to significant joint damage and progressive loss of function if untreated.  However, the ALJ need not specifically refer to every piece of evidence in his decision.  *Dyer*, 395 F.3d at 1211.  Dr. Goodman's statements were vague, conclusory, and failed to explain the type of marked functional limitation Hunter experienced or the domains in which his disease limited him.  *See Lewis*, 125 F.3d at 1440 (indicating that good cause exists to refrain from giving substantial or considerable weight to a treating physician's conclusory opinions).  Moreover, Dr. Goodman's statement of concern over potential future joint damage was speculative and failed to describe Hunter's limitations at the time of evaluation.

Second, the ALJ properly weighed the opinions of the State agency medical consultants.  Although Dr. Hernandez and Dr. Prather reviewed the evidence in April 2012 and July 2012, respectively, the ALJ considered their opinions along with subsequent evidence, as indicated by his reference to Dr. Goodman's treatment notes from October 2012 through December 2013.  Moreover, despite the fact that neither Dr. Hernandez nor Dr. Prather personally treated Hunter, the regulations provide that non-examining sources may offer opinion evidence and

8

that State agency medical consultants are highly qualified and considered experts in Social Security disability evaluations. *See* 20 C.F.R. § 416.927(e).

Third, the ALJ properly considered the Function Report and the Teacher Questionnaire. He accorded great weight to both forms, which he concluded indicated that Hunter faced no problems in any of the six domains. The Report indicated through checked boxes that Hunter's eyesight was impaired, his physical abilities were limited, his impairments affected his ability to help himself and cooperate with others in taking care of his personal needs, and his ability to focus on a task was limited. However, in the sections reserved for explanation adjacent to these areas, the form lacked a description of Hunter's limitations. Hence, the ALJ's statement that the Function Report indicated no problems in the six functional equivalence domains is consistent with the absence of any explanatory information in the Report.

Furthermore, the Teacher Questionnaire indicated that Hunter faced problems playing cooperatively with other children, making friends, seeking attention appropriately, and following rules. Additionally, Hunter required behavior modification strategies and was suspended for fighting. However, Dr. Draper also indicated that Hunter encountered no problems in this domain and that his functioning appeared age-appropriate. Out of the thirteen total activities in the domain, Hunter received a "no problem" rating of 1/5 in nine activities. He did not

receive any ratings above the "obvious problem" level of 3/5. Dr. Draper indicated that Hunter showed age-appropriate functioning in all domains except for health and well-being, of which she was unsure. Thus, the ALJ's statement that the Teacher Questionnaire indicated no problems in the six functional equivalence domains is consistent with the ratings Dr. Draper assigned to Hunter. Even though the ALJ did not expressly discuss Dr. Draper's ratings of slight or obvious problems, the ALJ was not required to refer to every piece of evidence in his decision. *See Dyer*, 395 F.3d at 1211.

Thus, the ALJ properly evaluated the opinions of Hunter's treating physician, the State medical agency consultants, Banks, and Hunter's teacher, assigning the appropriate weight to each and evaluating accordingly. The ALJ's conclusions that the medical opinions, the Function Report, and the Teacher Questionnaire indicated no problems or less-than-marked problems in the six functional equivalence domains is consistent with the opinion evidence.

### III.

Banks argues that the ALJ erred in concluding that Hunter's impairments did not meet or medically equal Listing 14.09, inflammatory arthritis. She contends that the ALJ failed to consider the severity of Hunter's depression, difficulty concentrating, and side effects from medication, and that the evidence in the record, such as Hunter's school records and Dr. Goodman's treatment notes,

document the severity of Hunter's physical and mental impairments and their resulting functional limitations. She also asserts that the ALJ failed in its obligation to obtain the advice of a medical expert on the issue of medical equivalence. Finally, Banks contends that Dr. Goodman's records show that Hunter had either a marked or extreme limitation in four of the functional equivalence domains, and, thus, his impairments functionally equaled a listing impairment.

The ALJ did not err in concluding that Hunter's impairments did not meet a listing impairment, because the evidence did not show that he met the criteria of any of the subsections of Listing 14.09. Further, the ALJ was not required to consult an expert on medical equivalence, as the evidence was sufficient to support a determination of the claim. *See* 20 C.F.R. § 416.919a(b); *Ingram*, 496 F.3d at 1269. Finally, Banks waived her argument that Hunter's impairments medically or functionally equaled a listing impairment by making no arguments on the merits of each claim and citing to no authority or evidence to support each conclusion. *See Hamilton*, 680 F.3d at 1319.

In determining whether an individual under the age of 18 is disabled, the Commissioner uses a three-step, sequential evaluation process. 20 C.F.R. § 416.924(a). This process includes an analysis of whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe and medically

11

determinable impairment or a combination of impairments that is severe; and

(3) has an impairment, or combination thereof, that meets or medically equals, or

functionally equals, a Listing, and additionally meets the duration requirements.

20 C.F.R. § 416.924(a)-(d); *see also id.* § 416.926 (describing "medical

equivalence"); *id.* § 416.926a (describing "functional equivalence").  At step two,

the ALJ considers "all relevant information," such as evidence from medical

sources and nonmedical sources, including testimony from the child's parents and

teachers.  *Id.* § 416.924a(a)(1)-(2).  At step three, the ALJ looks to whether the

claimant has "marked" limitations in at least two of six domains, or an "extreme"

limitation in one domain.  *Id.* § 416.926a(d); *see id.* § 416.926a(g)-(*l*).  These

domains are: (1) acquiring and using information; (2) attending and completing

tasks; (3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for oneself; and (6) health and physical well-being.  *Id.*

§ 416.926a(b)(1).

To meet the criteria for subsections A and C1 of Listing 14.09, a claimant

must show "persistent inflammation or deformity in one major peripheral weight-

bearing joint resulting in the inability to ambulate effectively . . . or one major

peripheral joint in each upper extremity resulting in the inability to perform fine

and gross movements effectively."  20 C.F.R. Pt. 404, Subpt. P., App. 1,

§ 14.09(D)(6)(e)(i).  An inability to ambulate effectively means an "extreme

limitation of the ability to walk," such as when a person needs to use a walker or cannot perform routine activities such as shopping or banking. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(B)(2)(b)(1)-(2). Inability to perform fine and gross motor movements refers to an extreme loss of functioning in both hands. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(B)(2)(c). To meet listing-level severity of subsections B, C2, and D, the arthritis must involve various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09(D)(6)(e)(ii). Meeting subsections C1 and C2 involves showing a diagnosis of ankylosing spondylitis[1] or other spondyloarthropathies.[2] 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09.C. While the ALJ has a duty to develop the record, he need not order a consultative examination as long as the record contains sufficient evidence for him to make an informed decision. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The regulations stipulate that, in cases that proceed to the ALJ level, the responsibility for deciding medical equivalence rests with the ALJ. 20 C.F.R. § 416.926(e). Ordering a consultative

[1] Ankylosing spondylitis is an inflammatory disease that, over time, can cause some of the vertebrae in the spine to fuse. *See Ankylosing spondylitis – Mayo Clinic*, Mayo Clinic, Nov. 1, 2016, http://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/home/ovc-20261048.

[2] Spondyloarthropathies are a group of arthritic diseases that can cause inflammation of the spine. *See Spondylitis – Cleveland Clinic*, Cleveland Clinic, Nov. 4, 2014, http://my.clevelandclinic.org/health/articles/spondyloarthropathy.

examination is a discretionary matter for the ALJ and would be sought "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision" on the claim.  20 C.F.R.    § 416.919a(b).

A passing reference to an issue in a brief is insufficient, and the failure to make arguments and cite authorities in support of an issue results in waiver. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319.

Banks fails to demonstrate that Hunter met the criteria for Listing 14.09,[3] as his impairments did not meet the severity of any of its subsections.  No evidence shows that Hunter suffered from persistent inflammation or deformity that caused an inability to walk effectively or perform fine or gross motor functions, a need for an assistive device to walk, or an extreme loss of functioning in both hands.  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 1.00(B)(2)(b)(1)–(2), 14.09(D)(6)(e)(i). Dr. Goodman indicated that Hunter had 5/5 grip strength and did not need a hand-held assistive device to walk independently.  Although Dr. Goodman stated that Hunter may have trouble performing sustained fine or gross manipulations due to involvement of the right wrist, he did not state that Hunter faced an extreme loss of

---

[3] The Commissioner contends that Banks waived the entire issue of whether Hunter's impairments met or medically equaled a listing impairment.  *See Hamilton*, 680 F.3d at 1319. However, Banks cites to specific evidence and symptoms that she contends the ALJ overlooked in its analysis and, thus, sufficiently argues that Hunter met or equaled the criteria of Listing 14.09.  However, to the extent that Banks argues that Hunter met or equaled the criteria of a listing impairment *other* than 14.09, she waived the argument by failing to name the impairment, any of its criteria, or any evidence to support such a conclusion.  *See Hamilton*, 680 F.3d at 1319.

functioning in both hands.  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §

1.00(B)(2)(c).

Furthermore, the record fails to demonstrate that Hunter had various

combinations of complications of one or more major peripheral joints or other

joints, such as inflammation or deformity, extra-curricular features, repeated

manifestations, and constitutional symptoms or signs.  *See* 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 14.09(D)(6)(e)(ii).  Dr. Goodman noted in March 2012 that

Hunter's condition was not inflammatory.  He noted between January 2012 and

December 2013 that "pertinent negatives" included activity limitation, fatigue,

headache, joint swelling, and weight loss, as well as weakness on all of these visits

except January 2013.  Moreover, no diagnosis of ankylosing spondylitis or other

spondyloarthropathies existed to satisfy subsection C.  *See* 20 C.F.R. Pt. 404,

Subpt. P., App. 1, § 14.09.C.  Accordingly, Hunter's impairments did not meet the

criteria of Listing 14.09.

Regarding medical equivalence, Banks waived her argument that Hunter's

impairments medically equaled a listing impairment.  She makes no arguments on

the merits of the issue and cites no authority or evidence to support that conclusion.

*See Hamilton*, 680 F.3d at 1319.  Banks merely includes a one-sentence

argument—a conclusory statement that Dr. Goodman's records show that Hunter

demonstrated a marked or extreme limitation in the domains of attending and

15

completing tasks, interacting and relating with others, caring for himself, and health and physical well-being.  *See Hamilton*, 680 F.3d at 1319.  In addition, Banks's contention that the ALJ had a duty to consult an expert on the issue of medical equivalence is meritless.  The ALJ is not required to do so because the record contained sufficient evidence to reach an informed decision, and the evidence as a whole sufficiently supported a determination of the claim.  *See* 20 C.F.R. § 416.919(b); *Ingram*, 496 F.3d at 1269.  For example, the evidence included records spanning two years of notes from Hunter's treating physician, as well as a Function Report, school records, and the opinions of two State agency medical consultants.

In conclusion, upon review of the record and consideration of the briefs, we affirm.

**AFFIRMED.**