[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13689

Non-Argument Calendar

_____

BARBARA BUCKHANON,

Plaintiff-Appellant,

*versus*

OPELIKA HOUSING AUTHORITY,

Defendant-Appellee,

MATTHEW MCCLAMMEY,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:19-cv-00893-ECM-KFP

_____

Before JORDAN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Plaintiff Barbara Buckhanon brought suit against her former employer, Opelika Housing Authority, alleging color-based discrimination in violation of Title VII.  The district court granted summary judgment on Buckhanon's claim in favor of Opelika.  We affirm.

**I.**

Barbara Buckhanon, a dark-skinned black woman, worked for Opelika Housing Authority as a Housing Quality Specialist until she was fired.  As an HQS inspector, Buckhanon was responsible for inspecting properties, recording failed inspections, and scheduling reinspection.  While employed, Buckhanon was supervised by Julia Dowell, a light-skinned black woman.  Dowell in turn reported directly to Matthew McClammey, a light-skinned black man.

While she received positive reviews at first, Buckhanon's work later declined. Buckhanon was repeatedly late on completing inspections and reinspections.  In Buckhanon's view, McClammey and Dowell failed to provide proper instruction on how to use the new inspection software system.  When she requested additional

training on the program, Dowell provided her with an online option.  But Buckhanon still struggled to use the new program and continued her poor record on completing inspections and reinspections in a timely manner.  In response, McClammey decided that Buckhanon could no longer perform inspections.

Buckhanon filed an EEOC Charge of Discrimination against Opelika.  She alleged in that Charge that she was being excessively criticized and set up to fail at work, in part because of her skin color.  EEOC later closed this Charge and sent her a Notice of Right to Sue letter.  Two months later, McClammey fired Buckhanon.

Buckhanon brought a color-based discrimination suit, alleging that Opelika discriminated against her based on the color of her skin.  After discovery, Opelika moved for summary judgment.  The district court granted the motion for summary judgment.  Buckhanon appeals.[1]

## II.

"We review the district court's decision to grant summary judgment de novo."  *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (emphasis omitted).  Summary

---

[1] Buckhanon also brought retaliation, failure to train, and due process claims under 42 U.S.C. § 1983 and an unpaid overtime claim under the Fair Labor Standards Act against Opelika, as well as a separate retaliation claim against McClammey under 42 U.S.C. § 1983.  These claims were all either dismissed or resolved by the parties.  So the only claim resolved at summary judgment, and thus the only claim before this Court today, is Buckhanon's Title VII discrimination claim against Opelika.

judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell*, 276 F.3d at 1279.

## III.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to intentionally discriminate against an employee with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–01 (1973). Title VII discrimination claims can be categorized as either mixed motive or single motive. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). For a single-motive theory, a plaintiff must show that discrimination was the but-for cause of the adverse employment action. *Id.* But under a mixed-motive theory, a plaintiff need only show that her gender was a "motivating factor" in the employer's decision to take adverse employment action. *Id.* (quotation omitted). At summary judgment, the ultimate question for all Title VII intentional discrimination claims is the normal standard: whether a reasonable jury could infer that the reason for the adverse employment action was illegal discrimination. *Tynes v. Florida Dep't of Juv. Just.*, 88 F.4th 939, 946–47 (11th Cir. 2023).

The district court analyzed Buckhanon's claims under a single-motive theory, finding that she failed to sufficiently plead or provide sufficient evidence to support a mixed-motive theory. It is true that Buckhanon's complaint only generally states that her "color was a motivating factor, moving force, and/or otherwise influenced" her ultimate termination. But it is still an "open question in this Circuit" whether a defendant must actually plead a mixed-motive theory in her complaint. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1337 n.2 (11th Cir. 2023). We need not resolve that question today, though, because regardless of the theory applied, Buckhanon's claims fail.

## A.

We start with the single-motive theory. "There is more than one way to show discriminatory intent using indirect or circumstantial evidence." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). One is via the "burden-shifting framework set out in *McDonnell Douglas*." *Id.* This is an evidentiary tool used to "establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993). It involves a three-step process for a plaintiff to show intentional discrimination. *First*, a plaintiff must establish a "legally mandatory, rebuttable presumption" of intentional discrimination by showing that she (1) belongs to a protected class, (2) suffered an adverse employment action, (3) was qualified for the job in question, and (4) was treated less favorably by her employer compared to another employee who was similarly situated in all material respects. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 n.7 (1981); *Tynes*, 88 F.4th

at 944 .  The burden then shifts to the defendant, who has a chance to "articulate a legitimate, nondiscriminatory reason for its actions." *Lewis v. City of Union City*, 918 F.3d 1213, 1221 (11th Cir. 2019) (en banc).  Once the defendant has done so, the plaintiff can rebut the legitimate nondiscriminatory reason by showing that it is pretextual.  *Id.*

Of course, a plaintiff is not limited to *McDonnell Douglas* because the ultimate question is the normal summary judgment standard.  *Tynes*, 88 F.4th at 946–47.  We thus review all relevant direct and circumstantial evidence to determine if a convincing mosaic of evidence has been presented such that a reasonable juror could find intentional discrimination.  *Id.* at 946; *Hamilton*, 680 F.3d at 1320.  Probative evidence may include, "among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext."  *Tynes*, F.4th at 946 n.2 (quotation omitted).

Applying this approach to Buckhanon's claim, we ask whether there is enough evidence such that a reasonable juror could infer intentional discrimination.  Buckhanon presents the following evidence to support her Title VII discrimination claims: that she was fired two months after her EEOC Charge was closed, that her superiors began "secretly monitoring and taking notes" on her, and that similarly situated light-skinned employees received better treatment.

Taken as a whole, Buckhanon's evidence is insufficient to show discriminatory intent. Of all three of the employees she references, none had the same job title or job responsibilities (like performing inspections and reinspections), none had the same supervisor, and none committed the same misconduct as she did. As for her supervisors monitoring her and taking notes, Buckhanon never explains *why* a supervisor monitoring her, as supervisors often do, shows racial discrimination, particularly given that she had received poor reviews regarding her work. And with respect to her being fired two months after her EEOC charge, Buckhanon fails to show how being fired for filing an EEOC charge shows discrimination on the basis of race.[2]

So none of the evidence Buckhanon provides suggests that her skin color was the reason she was transferred or fired. *See Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1019–20 (11th Cir. 2023). She also does not dispute that she received warnings about her work product prior to her transfer and firing, and that she had failed to complete inspections and reinspections in a timely manner. The district court thus correctly concluded that a reasonable juror could not find that discrimination was the but-for cause of the adverse employment action.

---

[2] To be sure, filing an EEOC complaint is protected conduct, so an adverse employment action two months after an EEOC filing could be evidence of retaliation. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020). But there is no retaliation claim here, and Buckhanon fails to provide an explanation connecting her claims regarding the EEOC charge to her claims of racial discrimination.

**B.**

We now move to the mixed-motive analysis. Here, "a plaintiff need only show that a protected consideration contributed in some way to the outcome—even if it ultimately changed nothing." *Yelling*, 82 F.4th at 1339. An employee can succeed under a mixed-motive theory by presenting evidence showing that discriminatory input factored into the decisional process that resulted in the adverse employment action. *Quigg*, 814 F.3d at 1241. This can include evidence such as discriminatory statements by those involved in the decisional process. *Id.*

Buckhanon seems to confuse the mixed-motive and convincing mosaic analyses. We thus rely on the same evidence analyzed for Buckhanon's convincing mosaic argument to assess her claims under a mixed-motive theory. Buckhanon presents the following evidence: her superiors monitored her and took notes, she was fired two months after her EEOC Charge closed, and light-skinned employees received better treatment in comparison.

This evidence is not enough to show discrimination under a mixed-motive theory. Buckhanon fails to show how any of the evidence provided suggests discriminatory input into the decision to fire her. Her claim that light-skinned employees received better treatment is unconvincing given that none of the employees she points to held the same position, were subject to the same supervisors, or committed the same misconduct. And she fails to adequately explain how her allegations of monitoring and notetaking and evidence that she was fired two months after the

22-13689            Opinion of the Court            9

EEOC Charge are connected to discrimination based on her skin color.   Because none of the evidence she provides suggests discriminatory input into the decision-making process, Buckhanon's claims fail under a mixed-motive analysis.  *See id.*

★     ★     ★

Under both the single-motive and mixed-motive analyses, Buckhanon failed to provide sufficient evidence of discriminatory intent.  We AFFIRM the district court's summary judgment order.

**AFFIRMED.**